THE STATE v. PLATNER, Appellant.

### Division Two, May 22, 1906.

**ASSAULT WITH INTENT TO RAPE: Sufficiency of Evidence.** Evidence *held* sufficient to justify a conviction of assault with intent to rape.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

AFFIRMED.

*Frank L. Forlow* for appellant.

Defendant did not intend to force compliance with his desire at all hazards regardless of prosecutrix's resistance, and therefore he is not guilty of the crime charged. State v. White, 52 Mo. App. 285; State v. Hayden, 141 Mo. 311; State v. Riseling, 186 Mo. 521; State v. Scholl, 130 Mo. 396; State v. Owsley, 102 Mo. 678.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

The evidence was sufficient to justify a conviction of defendant of the crime charged. State v. Whitsett, 111 Mo. 202; State v. Alcorn, 137 Mo. 121; State v.

Urie, 101 Iowa 412; State v. Page, 127 N. C. 512; Dunn v. State, 56 Ga. 401; State v. Beard (Idaho), 57 Pac. 867; State v. McCune, 16 Utah 170; Harlan v. People, 76 Pac. 793.

BURGESS, P. J.—On the 30th day of June, 1905, the defendant was convicted in the circuit court of Jasper county and his punishment fixed at four years imprisonment in the penitentiary, under an information filed by the prosecuting attorney of said county charging him with having committed an assault upon one Minnie L. Stotts, with intent to ravish and carnally know her feloniously and against her will. In due time defendant filed motions for new trial and in arrest, which were overruled. He appeals.

The facts are about as follows: Minnie L. Stotts resided at Afton in the Indian Territory. In the early part of June, 1905, she left Afton to visit a brother in Dade County, Missouri, and stopped at Webb City to spend the night with friends. She arrived at said city on a train which was due there at 8:45 that evening. By previous arrangement, one Fred Wallner, a man whom she had met before and to whom she was engaged to be married, met her at the station upon the arrival of the train. They walked to Carterville, near by, where for some reason unexplained they were arrested by a policeman and locked up in the city prison. After being kept in confinement for about an hour they were released, and they started to walk east to Main street, when defendant and another young man named Hardy followed them. The young men walked around in front of the prosecutrix, and defendant remarked to her that she was keeping late hours. He also wanted to know where she was going and said that that policeman was a friend of his. Wallner replied that it was nobody's business where they were going, and prosecutrix said she was going to the little town of Prosperity. Defend-

ant then said she was going with him, and he and Hardy took hold of prosecutrix by the arms and began to drag her along.   When Wallner objected, defendant said, "Don't you say a word, or we will both jump on you and beat you to death." At that Wallner started to run, and Hardy threw a rock and struck Wallner on the back of the head, and one of them (the record is obscure as to which) drew a knife.  Wallner called for help and ran back towards the city prison.  When prosecutrix screamed, defendant and Hardy struck her in the face, and both of them took hold of her and dragged her down the street towards a vacant lot.  Prosecutrix resisted all she could and tried to jerk loose from them, but was overpowered.  Defendant and Hardy pushed prosecutrix backwards and threw her to the ground, and held her by the arms.  Defendant then said, "Now, sweetheart, you are going to let me have it."   Prosecutrix refused and continued to scream; and defendant took out his handkerchief and wiped the blood from her nose and mouth.  As she was still calling for help, defendant put his arm over her mouth and told her to be still or he would kill her.  Defendant pulled up the clothes of prosecutrix, and again cautioned her to be still; at the same time he unbuttoned his pants.  When they heard a pistol shot defendant threw his coat over prosecutrix to conceal her white waist; when a second shot was heard, defendant and Hardy ran off.  In the meantime, Wallner had gone back to the policeman, made complaint of the assault, and he and the officer hurried to the place where Wallner had just left prosecutrix.  When they reached that place prosecutrix was not there, but they heard her screams still further down the street.  When they got to her defendant and Hardy had gone, and prosecutrix was on the ground and her nose and mouth were bleeding.  The proprietor of a restaurant testified to the fact that Wallner and prosecutrix passed his place of business after they were released from prison, and that defendant and Hardy got

up, left the table, talked to each other and followed after prosecutrix. The constable testified to seeing defendant sitting on a bench in front of a saloon that night after the alleged assault. That defendant jumped up and started to run when police officer Brown came out of the saloon with Hardy under arrest. That some twenty-five people gathered around, and the officer told Wallner that he had recognized one of his men, and to try and see if he could find the other one. Defendant then tried to get behind the constable, but Wallner recognized him; defendant was pale and excited.

The evidence for the defendant tended to show that he was a fireman and worked in a mine at Osage. That, on the night in question, defendant and Hardy were in a restaurant eating lunch when prosecutrix and Wallner passed. That they came out, followed in the same direction, but on the other side of the street from prosecutrix, but accidentally caught up with her. That Hardy and Wallner got into a difficulty, used profane language, and Hardy threw rocks at Wallner. While this was going on, defendant coaxed prosecutrix to go on with him down the street. That Hardy got away from Wallner and came running towards prosecutrix and called to her. When prosecutrix asked what he wanted, Hardy tried to get her to go with him; but prosecutrix said she was going with defendant. That Hardy then hit prosecutrix in the mouth, and defendant drove him away. After going on down the street some distance further, defendant and prosecutrix sat down on the ground, and defendant solicited her to have sexual intercourse with him, and she asked him if he had any money. That they soon heard the officer coming down the street, and prosecutrix told defendant to throw his coat over her white waist, and he did so. That, when the first pistol shot was fired, defendant told her to be right still; but when the second shot was heard prosecutrix advised him to run; and defendant did run. That prosecutrix never-screamed, never tried

to get away, and that defendant never tried to force her and never used any threatening language. Defendant admitted that he had never seen prosecutrix before that night, and did not know anything about her, except that she and Wallner had been arrested. Hardy did not testify either for the State or for the defense.

The court of its own motion gave the following instructions, to the giving of which instructions the defendant at the time duly excepted:

"The court instructs the jury that if they find and believe from the evidence beyond a reasonable doubt that the defendant wrongfully, unlawfully and feloniously, at the county of Jasper and State of Missouri, on or about the 9th day of June, 1905, did make an assault on the witness, Minnie L. Stotts, by forcibly taking hold of her or striking her for the purpose and with the felonious intent to ravish her, the said Minnie L. Stotts, the jury should find him guilty of assault with intent to rape, and assess his punishment at imprisonment in the penitentiary for a term not less than two years or more than five years, or by imprisonment in the county jail not less than six months, or by a fine not less than one hundred dollars and imprisonment in the county jail not less than three months, or by a fine not less than one hundred dollars.

"The court instructs the jury that if they find from the evidence that the defendant, at the county of Jasper and State of Missouri, on or about the 9th day of June, 1905, did wrongfully and willfully make an assault on the witness, Minnie L. Stotts, but without the intent to ravish her, then the jury should find him guilty of common assault, and assess his punishment at a fine not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

"The court instructs the jury that an assault is any unlawful physical force against a person, partly or fully put in motion, creating a reasonable apprehen-

sion of immediate physical injury to such person, and the word 'feloniously' means wickedly, wrongfully and against the admonition of the law.  To constitute the crime of assault with intent to rape, the jury must find that the defendant intended to use such force as would at all hazards overcome the resistance of said witness, Minnie L. Stotts, and compel her by force to submit to sexual intercourse with him.

"The court instructs the jury that all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons jointly is the act of all and of each one so acting; therefore, you are instructed that if you find from the evidence that the defendant, either by himself did feloniously and unlawfully make an assault on the witness, Minnie L. Stotts, with intent to ravish her, or that he was then and there present, feloniously aiding and abetting one William Hardy in such an assault, then he was equally guilty.

"The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony.  In determining the credit you will give to a witness, and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appearance of the witness upon the stand, the interest, if any, in the result of the trial, the motives actuating the witness in testifying, the witness's relation to or feeling for or against the defendant, or the alleged injured party, the probability or improbability of the witness's statement, the opportunity the witness had to observe and to be informed as to the matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within knowledge of such witness.  All these matters being taken into account, with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit and the testimony of each

witness such value and weight as you deem proper, and if upon a consideration of all the evidence you conclude that any witness has sworn willfully false as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony.''

The court, at the request of the defendant, gave the following instructions:

''The court instructs the jury that the information in this case is of itself a mere accusation or charge against the defendant and is not of itself any evidence of the defendant's guilt; and no juror ought in this case to permit himself to be, to any extent, influenced against the defendant because or on account of the information in the case.

''The defendant is presumed to be innocent until proven guilty by the evidence beyond a reasonable doubt. The term 'reasonable doubt,' as used in these instructions, means a substantial doubt arising from the evidence in the case, and not a mere possibility of the innocence of the defendant. If, from all the evidence, the jury have a reasonable doubt of the guilt of the defendant, it is the duty of the jury to give the defendant the benefit of such doubt and acquit.

''The court instructs the jury that unless they find from the evidence beyond a reasonable doubt that the defendant made an assault upon the witness, Minnie L. Stotts, with the felonious intent to rape her, you should find him not guilty of assault with intent to rape.

''The court instructs the jury that the defendant is a competent witness in his own behalf, and you must take his testimony into account and give it such weight in connection with all the other evidence before you as you deem proper. But in determining the credit you will give his testimony, you may take into consideration the fact that he is the defendant on trial testifying in his own behalf.

''The court instructs the jury that it is not an of-

State v. Platner.

fense under the laws of this State to solicit without force a woman to have sexual intercourse, whatever may be said as to the moral view of such an act.''

The first point presented on this appeal is as to the sufficiency of the information, which is claimed to be insufficient upon the ground that it is nowhere stated therein that it is made upon the oath of the prosecuting attorney, nor upon his official oath.. The information is in the language of the statute, and duly verified by the prosecuting attorney in accordance therewith. It is sufficient.

It is claimed by defendant that the verdict of the jury was not authorized by the evidence, and that at most he was guilty only of common assault. Upon the contrary, we think the evidence shows defendant's guilt beyond any question. He and his companion, Hardy, were alike guilty. They acted in concert in making the assault, and one is as guilty as the other. As the prosecutrix and her escort were walking along the street, the defendant and Hardy passed by and stepped in front of them, and then, after a few words, took hold of her by the arms and dragged her along with them. Wallner called for help, when defendant and Hardy threatened to beat him to death. At this he took fright and fled. The prosecutrix then screamed for help, when Hardy struck her in the face, forcing the blood from her nose and mouth, and they dragged her down the street to a vacant lot where they pushed her backwards to the ground and held her by the arms. Defendant then pulled up her clothing, and was proceeding to accomplish his nefarious purpose when, fortunately for the helpless woman, he was frightened away by pistol shots. These facts, if believed by the jury, and their verdict shows they were, more than justified such verdict.

Our conclusion is that the judgment should be affirmed. It is so ordered.

All concur.