[No. 9300.　Department Two.　March 28, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE L.
PEPOON, *Appellant*.[1]

INDICTMENT AND INFORMATION—OATH OF PROSECUTING ATTORNEY—AFFIDAVIT. Where an information is duly sworn to in an affidavit by the prosecuting attorney, who takes oath that he is the prosecuting attorney and that the information is true, it is sufficient without reciting that the averments were made on the oath of the prosecuting attorney.

CRIMINAL LAW—TRIAL—MISCONDUCT OF COUNSEL—ARGUMENT—APPEAL—HARMLESS ERROR. Rem. & Bal. Code, § 339, providing that no argument shall be allowed in the opening statement, is not violated by a lengthy and detailed statement of the facts, even if some slight inferences are drawn; and no prejudice results where counsel desisted on objection made, and nothing was said not fully justified by the testimony produced.

HOMICIDE—DEGREES OF OFFENSE—INSTRUCTIONS. In a prosecution for murder, the right of the jury to determine the degree of the

[1]Reported in 114 Pac. 449.

offense given by statute must be based on the evidence, and the court need not instruct thereon, where there was no evidence tending to show the commission of the lesser offenses.

SAME—EVIDENCE OF LESSER OFFENSES—SUFFICIENCY. In a prosecution for murder in the first degree by poisoning, there is no evidence to warrant instructions upon second degree murder or manslaughter, where it appears that the deceased was of unsound mind and in a highly nervous condition, and either in an attempt to allay such condition or to murder her, the defendants consulted as to the medicines to be given her, and administered the poison; since they were guilty of first degree murder or not at all.

HOMICIDE—VERDICT—DEGREES OF OFFENSE. A verdict of guilty as charged is sufficient in a prosecution for murder in the first degree, although the jury is required to find the degree.

HOMICIDE—TRIAL—VARIANCE. Upon an information for murder by administering poison on the 27th day of August, which caused the deceased to languish and die, it is not a variance to prove the deceased came to her death on the 29th.

CRIMINAL LAW—NEW TRIAL—MISCONDUCT OF JURY—VERDICT—IMPEACHMENT. On motion for a new trial, a conviction of murder cannot be impeached for misconduct of the jury by affidavits on information and belief.

SAME—MAGAZINES IN JURY ROOM. It is not reversible error, in a prosecution for murder, that the court permitted two jurors to be furnished with a magazine, it not appearing that there was anything in the magazines concerning the case, especially where the question is raised on motion for a new trial; since the presumption is that the court first censored the magazines.

CRIMINAL LAW—TRIAL—INDORSEMENT OF NEW WITNESSES—DISCRETION. It is not error to allow the name of a new witness to be indorsed on the information after the jury was sworn and the opening statement was made, where no surprise was claimed or continuance asked, and no abuse of discretion appears.

Appeal from a judgment of the superior court for Stevens county, Kennan, J., entered May 3, 1910, upon a trial and conviction of murder in the first degree. Affirmed.

*John B. Slater* and *J. A. Rochford*, for appellant.

*The Attorney General, Geo. A. Lee, Assistant,* and *H. G. Kirkpatrick*, for respondent.

DUNBAR, C. J.—The appellant was tried for murder in the first degree, in the superior court of Stevens county, Washington, was found guilty as charged in the information, and sentenced to life imprisonment in the penitentiary. The information upon which he was tried is as follows:

"H. G. Kirkpatrick, prosecuting attorney in and for the county of Stevens and state of Washington, comes here into court, and in the name and by the authority of the state of Washington, gives the court to understand and be informed that the said defendants, George Pepoon and Ray Wilcox, are hereby charged with the crime of murder in the first degree, committed as follows, to wit: That on the 27th day of August, A. D. 1909, in the county of Stevens and state of Washington, the said George Pepoon and Ray Wilcox, then and there being, did then and there unlawfully and feloniously, and with a premeditated design to effect her death, kill and murder Edith Pepoon, by then and there unlawfully and feloniously, and with a premeditated design to effect the death of the said Edith Pepoon, administering and giving to her, the said Edith Pepoon, strychnine, which said strychnine so administered by the said George Pepoon and Ray Wilcox was .a deadly and dangerous poison, and which said strychnine so administered by the said George Pepoon and Ray Wilcox to the said Edith Pepoon did cause her to languish and die, and was by the said defendants administered and given unlawfully and without justifiable or excusable cause; contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington."

The appellant alone was tried, Ray Wilcox, who was informed against jointly with him, not having been arrested, by reason of his flight from the country.

The first assignment of error involves the sufficiency of the information, the contention being that it does not allege facts sufficient to constitute a crime under the laws of the state of Washington, in that the information for murder does not set forth that the averments were on the oath of the prosecuting attorney. Conceding the demand of the statute to be as contended for by learned counsel for appellant, we

think the requirements have been fully met by the information. It is true that the prosecuting attorney does not say in words that he makes the statements under oath, but he takes his oath that he is the prosecuting attorney, and that the information is true, and that it is made for the reason that the grand jury is not in session. The facts upon which the information is based are certainly set forth in the information, the truth of which is sworn to, and the information thereby becomes a part of the affidavit, which it is claimed the law demands. The cases cited by appellant do not sustain his contention. *State v. Minor,* 193 Mo. 597, 92 S. W. 466, involves a case where the information was held insufficient because it was not based upon the oath of the prosecuting attorney which, as we have seen, this information is. The other case cited, *State v. Platner,* 196 Mo. 128, 93 S. W. 403, is squarely against the appellant's contention. The information in that case is not disclosed by the opinion, but it may be presumed from what is said by the court that, on the question involved here, it was substantially the same as the information in this case. All that the record discloses is the following statement of the court:

"The first point presented on this appeal is as to the sufficiency of the information, which is claimed to be insufficient upon the ground that it is nowhere stated therein that it is made upon the oath of the prosecuting attorney, nor upon his official oath. The information is in the language of the statute, and duly verified by the prosecuting attorney in accordance thereto. It is sufficient."

The second assignment is based upon the alleged error of the court in permitting the prosecuting attorney to make an argument to the jury while making his opening statement of the facts which he expected to prove, in violation of § 1, chap. 86, Laws 1909, p. 184 (Rem. & Bal. Code, § 339), which provides that nothing in the nature of comments or arguments shall be allowed in opening a case. The appel-

lant has contented himself with the general statement that there was a flagrant violation of this law, without specifying the particular language which it is claimed constituted the argument. We have, however, carefully read the opening statement, which is very circumstantial and lengthy, and are not able to say that the criticism is justified. It is sometimes difficult for one to make a long, detailed statement of facts without seeming to draw some slight inferences. It would probably be permissible for an attorney in his opening statement to say, "Gentlemen of the jury, to show the animus in this case we will prove the following state of facts," stating them. That would not be different in principle from stating, "We will prove such and such a state of facts, thereby showing the animus;" and that is the most that could be said of the statement in this case. And whenever such statement was objected to, counsel cheerfully desisted, always disclaiming any intention of making an argument. The object of this inhibition doubtless is to prevent prejudicing the minds of the jurors by injecting into the statement arguments which would not be admissible under the testimony, but which might maintain lodgment in the minds of the jurors and affect their verdict. But in this case no such result could have obtained, for the record shows that an argument just such as it is claimed was made would have been fully justified by the testimony which was produced; so that, even conceding appellant's contention, there was no prejudice.

It is next contended that the court erred in giving instruction No. 4, in that the jury was not instructed upon the law of murder in the second degree and of manslaughter. The fourth and fifth instructions upon that subject were as follows:

"(4) The statute of this state defining murder in the first degree so far as this case is concerned is as follows: 'The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed with a

premeditated design to effect the death of the person killed.'

"(5)    The statutes of this state further provide that no person shall be convicted of murder unless the death of the person alleged to have been killed and the fact of the killing by the defendant as alleged are each established as independent facts beyond a reasonable doubt."

It is no doubt true that the crime of murder includes the lesser crimes of murder in the second degree and of manslaughter, and it is equally true that the jury has a right to determine the degree of crime which was committed. But that determination must, of course, be based upon evidence. That is all that gives the determination any value. The anxiety of the law is to give the defendant the full benefit of trial by jury on all questions of fact, and it will not give its sanction to a farcical and arbitrary determination of any alleged fact which the jury has had no possible means of determining. If the defendant had been informed against for manslaughter and the state had failed to produce any evidence tending to show the commission of manslaughter, as it did fail in this case to do, there would have been no duty resting upon the jury, and it would clearly have been the duty of the court to discharge the jury because there was nothing upon which the function of a jury could take hold, and to discharge the defendant. The legal function of the jury is not at all changed because the question for determination arises upon an information in the first degree. We are, of course, not speaking with reference to weight of testimony, but of a case where there is no testimony whatever to weigh tending to show the commission of the lesser degree. Such is the case at bar with reference either to murder in the second degree or to manslaughter. The testimony shows that the wife of appellant, whom he is charged with murdering, was of unsound mind, and on the day of her death was in a highly nervous condition; that either in an attempt to allay this condition, or for the actual

purpose of murdering her, the appellant, with the aid of Wilcox, who by appellant's direction was waiting upon his wife, consulted as to where the medicine was which they desired to administer to her; that they secured the medicine, put it in a glass tumbler, and urged her to drink it; and that she did drink it, and immediately went into spasms and died from the effects of it. Under such circumstances one of two things is certain: either the potion was admin-. istered by mistake, in which event no degree of murder was committed, or it was administered with a premeditated, deliberate, and malicious intent to murder. There is no room under the testimony for any other theory, and no testimony whatever upon which any other verdict than the one rendered could have been based. Hence, it would be farcical to reverse the judgment on the ground complained of.

It is true that some of the earlier cases from this court seem in a measure to sustain appellant's contention, but the cases relied upon were based upon a misconception of what was actually decided in *State v. Greer*, 11 Wash. 244, 39 Pac. 874. There, it is true, it was held that, under an information similar to the information in this case, charging the defendant with the crime of murder in the first degree, the defendant might be convicted of murder in the second degree or of manslaughter, under the provisions of the code which undoubtedly so provide. But in that case error was. alleged because the court had so instructed. The record did not contain any statement of facts or bill of exceptions, so that it could not be determined on the appeal whether the instructions were justified or not, and the court properly held that every reasonable presumption would be indulged in aid of the judgment. But in *State v. Robinson*, 12 Wash. 349, 41 Pac. 51, 902, it was squarely held that the testimony controlled the instructions and the verdict, and that it was the duty of the jury, if they entertained a. reasonable doubt of the appellant's guilt of the only crime

which the evidence tended to prove, to acquit and not compromise with that doubt by finding him guilty of a lower grade of offense. In *State v. McPhail*, 39 Wash. 199, 81 Pac. 683, after a review of our own decisions as well as of the authorities generally, it was squarely decided that a defendant can only be convicted of a lesser degree when there is testimony to sustain such conviction.

Probably the latest expression of this court on this question is in *State v. Kruger*, 60 Wash. 542, 111 Pac. 769, where the doctrine announced above was reaffirmed, and it was said:

"It is true that the greater includes the less, but the defendant is not guilty of either unless the testimony brings him within the definition of a crime. It was never the intent of the law to submit a possible verdict upon a so-called included crime because included in law. It must be included in fact, and by the facts of the particular case."

The fourth contention is that a verdict of guilty as charged is not a sufficient finding of the degree where the statute requires the degree to be found by the jury. In addition to the facts discussed above, viz., that under the testimony no other degree of guilt could have been found by the jury, there is no difficulty in interpreting this verdict. It was as follows:

"We, the jury in the case of The State of Washington, Plaintiff, vs. Geo. Pepoon, Defendant, find the defendant guilty of the crime as charged in the information."

So that it was just as certainly a verdict of murder in the first degree as though it had been so stated in so many words, and the court would have no difficulty whatever in pronouncing the proper judgment. Any verdict which clearly indicates the conclusion reached by the jury is sufficient. *State v. McCormick*, 56 Wash. 469, 105 Pac. 1037.

The conclusion we have reached on the fourth assignment disposes of the fifth, viz., that the court erred in the rendition of the judgment and sentence on the verdict of the

jury. There seems to be no merit in the contention that the judgment is illegal because the information charged the commission of the crime on the 27th day of August, 1909, and the testimony was to the effect that the deceased came to her death on the 29th day of August.

It is also urged that the court erred in overruling the defendant's motion for a new trial on the ground of misconduct of the jury. The affidavits tending to show misconduct were passed upon by the court and the motion overruled, and from a reading of the whole record we think there was no abuse of discretion. We first held in *State v. Murphy*, 13 Wash. 229, 43 Pac. 44, that a verdict in a prosecution for murder could not be impeached for misconduct of the jury, by an affidavit based upon information and belief as to the facts charged. We said that the presumptions surrounding the verdict of a jury are necessary, and can only be overcome by the competent testimony of some one having knowledge upon the subject; and this has been the uniform ruling of this court. *State v. Simmons*, 52 Wash. 132, 100 Pac. 269; *Haggard v. Seattle*, 61 Wash. 499, 112 Pac. 503.

It does incontrovertibly appear, however, that two of the jurors were each furnished with a magazine by consent and direction of the court, and on this state of facts it is contended by appellant that reversible error was committed, under the rule announced in *State v. McCormick*, 20 Wash. 94, 54 Pac. 764. In that case a judgment was reversed because the court, without permission of the defendant, delivered to certain of the jurors letters and a paper addressed to them, although the judge stated that he had examined the letters and they had been in transit for several days, and that he had examined the paper and saw that it contained nothing relative to the cause on trial; this court saying, in passing upon the question, that it was conceivable that the envelopes containing the letters might have been opened and communications to the jury in-

serted therein, and the envelopes again sealed in such a manner as to escape detection.

It is somewhat difficult to distinguish that case in principle from the case at bar, although the somewhat impossible supposition indulged in that case in reference to tampering with the sealed letters would not obtain here. There is no showing made, and no claim, that there was anything in the magazines concerning the case being tried. If there were any data presented in support of the motion for a new trial on this ground, they were considered by the court; and, in the absence of some showing to the contrary, we must conclude that the magazines had been censored by the judge before he directed them to be delivered to the jurors. But in addition to this, we think *State v. McCormick* was an extreme case and does not reflect the more modern ideas on this subject. While the rights of the defendant in a criminal action must be maintained, when once the court indulges in consideration of bare possibilities and reverses judgments because it was within the range of possibility that a juror might have received a communication from the outside, the court will wander from the path of reasonable caution into the hazy realms of fancy; for when imagination waves its magic wand, sober calculation is put to flight. In the case cited, the court, by extending its imagination a hair's breadth, might have concluded that it was conceivable that a communication concealed in a sandwich or biscuit would reach a juror, or would reach him in one of many other ways which are conceivable. In addition, we must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure. This question being raised on a motion for new trial, where there is no showing even pointing to any invasion of the de-

fendant's rights, but the claim of error resting exclusively on the theory that some juror might possibly have been subjected to undue influence, the assignment, under the great weight of authority, cannot be sustained. As to the later views of this court, see *State v. Aker*, 54 Wash. 342, 103 Pac. 420.

The last assignment is that the court erred in permitting the prosecuting attorney to endorse upon the information, over the objection of the defendant, the name of Eugene Travis, after the jury were sworn and after the opening statement to the jury had been made by the prosecuting attorney. The record shows that no continuance was asked on account of any alleged surprise, nor any showing made of any prejudice by reason of such endorsement. It was held by this court, in an early case, to wit, *State v. John Port Townsend*, 7 Wash. 462, 35 Pac. 367, that where a defendant in a criminal action does not seek a continuance on the ground that the names of certain witnesses for the state had not been endorsed on the information before trial, but proceeded with the trial, such an endorsement would not warrant a reversal of the judgment; and such has been the uniform ruling of this court. We have also held that permission by the court to endorse witnesses' names on the information after trial commenced is largely discretionary, and not ground for reversal in the absence of abuse of discretion. *State v. Quinn*, 56 Wash. 295, 105 Pac. 818; *State v. Carpenter*, 56 Wash. 670, 106 Pac. 206; *State v. Le Pitre*, 54 Wash. 166, 103 Pac. 27.

There having been no prejudicial error committed, the judgment will be affirmed.

CHADWICK, CROW, and MORRIS, JJ., concur.