[No. 9751. *En Banc.* April 9, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR ASH, *Appellant*.[1]

HOMICIDE—DEGREES OF OFFENSE—INSTRUCTIONS—APPLICATION TO EVIDENCE. Where a homicide was committed by one who lay in ambush for two nights and one day waiting a favorable opportunity to shoot his victim, and the undisputed facts show a killing with a premeditated design without excuse unless his defense of insanity was established, it is reversible error to submit to the jury the crime of manslaughter.

CRIMINAL LAW—FORMER JEOPARDY—CONVICTION OF LESSER DEGREE AS ACQUITTAL OF HIGHER OFFENSE. Where a person accused of murder in the first degree was erroneously convicted of manslaughter, and the judgment is reversed on his own appeal, he cannot, on a new trial, plead the former conviction of the lesser offense as an acquittal of the greater offense; since by the appeal he waived his plea of former jeopardy, and the new trial should therefore be upon all the offenses included within the charge (Overruling *State v. Murphy*, 13 Wash. 229).

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 12, 1911, upon a trial and conviction of manslaughter. Reversed.

*Crandell & Crandell*, for appellant.

*Jno. L. Wiley* and *Robt. L. McWilliams*, for respondent.

MORRIS, J.—Appellant was tried upon an information charging murder in the first degree, and was convicted of manslaughter, from which he appeals.

The main assignments of error are based upon the instructions of the court submitting the crime of manslaughter to the jury, it being contended that there was no evidence supporting such an instruction, and hence it was error for the court to give it. It will not be necessary to review the evidence to ascertain if there was evidence upon which the instruction submitting manslaughter could be sustained. The

[1]Reported in 122 Pac. 995.

state concedes there was none.  In referring to the evidence, the state says in its brief: .

"The evidence in effect was that the defendant was guilty of a cold-blooded, deliberate murder, unless the defense of insanity interposed by the defendant was sufficient to justify the homicide and to warrant an acquittal."

The character of defendant's act, unless excused by his defense of insanity, would seem to be determined from the fact that he hid himself in the bushes near the residence of the deceased, where he lay in ambush all night, all the next day, and up to nine o'clock p. m. of the second night, awaiting a favorable opportunity to shoot and kill his victim. These undisputed facts contain no element of manslaughter. The defendant was guilty of killing a human being with a premeditated design to effect the death of the person killed, without excuse or justification in law; or else, by reason of his mental condition, he was not subject to the penalties of the law; and the court should so have instructed the jury.  It was, therefore, error to submit the crime of manslaughter, since there was no evidence in the case upon which such an instruction could be predicated.  The state contends that, since the greater includes the less, manslaughter is included in murder in the first or second degree.  Unquestionably this is true in law; but to be included in law is not sufficient; it must also be included in fact.  We have so held in a number of cases.  Reference to the latest two will be sufficient.  In *State v. Kruger*, 60 Wash. 542, 111 Pac. 769, we said:

"It is true that the greater includes the less, but the defendant is not guilty of either unless the testimony brings him within the definition of a crime.  It was never the intent of the law to submit a possible verdict upon a so-called included crime, because included in law.  It must be included in fact, and by the facts of the particular case."

In *State v. Pepoon*, 62 Wash. 635, 114 Pac. 449, it is said:

"It is, no doubt, true that the crime of murder includes the lesser crimes of murder in the second degree and of man-

slaughter, and it is equally true that the jury has a right to determine the degree of crime which was committed. But that determination must, of course, be based upon evidence. That is all that gives the determination any value. The anxiety of the law is to give the defendant the full benefit of trial by jury on all questions of fact, and it will not give its sanction to a farcical and arbitrary determination of any alleged fact which the jury has had no possible means of determining. If the defendant had been informed against for manslaughter, and the state had failed to produce any evidence tending to show the commission of manslaughter, as it did fail in this case to do, there would have been no duty resting upon the jury, and it would clearly have been the duty of the court to discharge the jury because there was nothing upon which the function of a jury could take hold, and to discharge the defendant. The legal function of the jury is not at all changed because the question for determination arises upon an information in the first degree. We are, of course, not speaking with reference to weight of testimony, but of a case where there is no testimony whatever to weigh tending to show the commission of the lesser degree."

Answering the rule of these cases, the state contends that, inasmuch as it is admitted that manslaughter is included in law in a charge of murder in the first degree, and as under our practice jurors are sole judges of the facts, the court cannot say, as a matter of law, there is no testimony to establish any of the lesser or included crimes, but must admit the legal inclusion and submit the inclusion in fact to the jury. This would be required where there was any fact or facts to be determined by the jury. But the court is not required to submit any determination of a fact to a jury when there is no fact, nor to permit a jury to establish by its verdict a fact which there is no evidence to sustain. Verdicts must be founded upon facts in evidence, and the court can only submit to the jury such verdicts as may be found from a review of the facts in evidence. When there is substantial evidence to establish a fact, the court cannot weigh it nor determine its relative merit. Nor can it convert an inclusion in law into an inclusion in fact, until there is a fact.

The inclusion in fact being established, the inclusion in law follows; but the latter cannot exist alone, nor find a place in any criminal trial, until the essential and indispensable facts appear in the evidence. Neither can we accept the argument of the state that appellate courts should not shut their eyes to the fact that jurors sometimes refuse to obey the instructions of the court, when there is no alternative between finding a man guilty of murder in the first degree and finding him not guilty; and ofttimes, under the impulse of sentiment or other motive, acquit rather than subject the accused by their verdict to the penalties of murder in the first degree. That jurors refuse to do their sworn duty in homicide cases, cannot influence judges in not doing theirs; and if actuated by motives other than their obligation to the state and to themselves, jurors permit guilty men to escape their just dues, the fault must rest with the jurors, and not with the courts, who must ever refuse to commit one legal wrong in order to palliate another. We are therefore of the opinion that it was error for the court to submit an instruction involving the crime of manslaughter.

Having reached this conclusion, we are brought face to face with another grave problem,—the effect of this ruling upon the appellant. It is contended, following the rule laid down in *State v. Robinson*, 12 Wash. 349, 41 Pac. 51, 902; *State v. Murphy*, 13 Wash. 229, 43 Pac. 44, and *State ex rel. Moorehead v. Chapman*, 64 Wash. 140, 116 Pac. 592, that the verdict of manslaughter is, in legal effect, an acquittal of the higher degree of homicide; and appellant cannot again be tried for those crimes without being twice put in jeopardy for the same offense; and as there was no evidence upon which to justify a conviction of manslaughter, the result must be the discharge of the defendant. One of these rules must be departed from, or else in this case, as in many others where the verdict results from an erroneous view of the law by the court below and the submission of improper verdicts, the appellate court, in correcting the error and

thus seeking to do justice as between the state and the defendant, must lay down a rule which results in the greatest injustice, and turns loose murderers and other violators of the law to prey upon other victims of their criminal lust. We have, therefore, carefully and conscientiously reviewed these two rules in order to satisfy ourselves which is best founded in reason, and which best serves the justice and purpose of the law. The first of these rules, as found in *State v. Kruger* and *State v. Pepoon, supra*, was first reviewed by the court in *State v. McPhail*, 39 Wash. 199, 81 Pac. 683, where it is said that,

"The decisions are practically uniform to the effect that a defendant can only be convicted of a lesser degree or of an attempt when there is testimony to sustain such a conviction. . . . A party has no constitutional right to a compromise verdict which is not supported by any testimony."

We rest our adherence to that rule, which has become one of universal application, upon the authority and reasoning of the *McPhail, Kruger*, and *Pepoon* cases. It is today and ever has been the law, without dissent or qualification.

The other rule, that a conviction of a lesser degree of a given crime is in legal effect an acquittal of the higher degrees, entitling the defendant to a discharge of the higher degrees upon a new trial, was first noted by this court in *State v. Robinson*, 12 Wash. 349, 41 Pac. 51, 902, although the point was not squarely raised or passed upon until the decision of *State v. Murphy*, 13 Wash. 229, 43 Pac. 44, where it was held that a conviction of murder in the second degree was an acquittal of murder in the first degree, and the defendant could only be again tried for the lesser crime. The only member of the present court who took part in the decision of *State v. Murphy* is the present chief justice, who vigorously dissented from the rule announced. It would be useless to attempt to harmonize the American cases upon this point. They are in as direct conflict as it is possible

for opposing opinions to be. The older rule is the one holding that a conviction of a lesser offense is not an acquittal of greater offenses charged in the same information, operating as a bar upon the granting of a new trial. It was first announced in 1819, in *Morris v. State*, 1 Blackf. (Ind.) 37, and has been followed in: *Brantley v. State*, 132 Ga. 573, 64 S. E. 676, 22 L. R. A. (N. S.) 959; *Veatch v. State*, 60 Ind. 291; *State v. McCord*, 8 Kan. 232, 12 Am. Rep. 469; *In re Somers*, 31 Nev. 531, 103 Pac. 1073, 135 Am. St. 700, 24 L. R. A. (N. S.) 504; *Commonwealth v. Arnold*, 83 Ky. 1, 4 Am. St. 114; *State v. Kessler*, 15 Utah 142, 49 Pac. 293, 62 Am. St. 911; *Bohanan v. State*, 18 Neb. 57, 24 N. W. 390, 53 Am. Rep. 791; *State v. Behimer*, 20 Ohio St. 572; *Briggs v. Commonwealth*, 82 Va. 554; *State v. Bradley*, 67 Vt. 465, 32 Atl. 238; *Turner v. Territory*, 15 Okl. 557, 82 Pac. 650; *State v. Gillis*, 73 S. C. 318, 53 S. E. 487, 5 L. R. A. (N. S.) 571; *State v. Matthews*, 142 N. C. 621, 55 S. E. 342; *United States v. Harding*, Fed. Case, No. 15,301; *Trono v. United States*, 199 U. S. 521, and other cases from the same courts.

The theory of these cases is that, when a conviction for the lesser crime, under an indictment or information charging a greater crime, is reversed upon the voluntary appeal of a defendant, he thereby waives the acquittal upon the higher charge, and upon the conviction being set aside, he is in the same position as if no trial had been had, the reversal operating upon the acquittal as well as upon the conviction. In some of these states, statutes may be found providing, in effect, that a new trial places the parties in the same position as if no trial had been had. In others, there is no such statute; while in some states having such a statute the contrary rule is held, as in *Johnson v. State*, 29 Ark. 31, 21 Am. Rep. 154. It would therefore seem, as stated in the note to *Commonwealth v. Arnold, supra*, 4 Am. St. 119, that the existence or nonexistence of the statute has not been a determining factor in the decisions.

The contrary line of decisions commences in 1846, with *Slaughter v. State*, 6 Humph. (Tenn.) 410, and this rule has been followed in many cases collected in notes to dissenting opinion in *Trono v. United States, supra,* and in *State v. Gillis, supra,* 5 L. R. A. (N. S.) 571, and *Brantley v. State, supra,* 22 L. R. A. (N. S.) 959. They rest upon the theory, as stated in *People v. Dowling,* 84 N. Y. 478, that no person shall be twice put in jeopardy for the same offense, and that the application for a correction of the verdict is not to be taken as more extensive than the defendant's needs. He asks for a reversal of so much of the judgment as convicted him of guilt; but does not ask for a correction of so much of it as acquits him of any crime; and that, while waiving his privilege as to one offense, he keeps it as to the other, the waiver being construed to extend to the precise thing as to which relief is sought.

The only statute we have defining a new trial is Rem. & Bal. Code, § 398: "A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referees." This statute adds no particular strength to the position we have taken, as it only announces what would unquestionably be the rule irrespective of any statutory definition, although it would seem that in using the phrase "a re-examination of an issue," it was meant to re-examine the whole issue as originally presented to the court or jury, and not a part of that issue, less than the whole. It will not be denied that, when in an appeal in a criminal case where a single offense only is charged, a verdict of guilty is set aside and a new trial granted, the effect is to annul the judgment below as effectively as if there had been no trial; and the defendant stands before the bar of the court upon his second trial in the identical position in which he stood upon the first trial. None of his rights have been abridged, nor have any additional burdens been cast upon him. The right of appeal is a privilege granted by law, and when that right is taken advantage of by a defendant con-

victed of an included offense, he must accept the privilege with all its attendant results; and one of those results and the one in effect prayed for in all criminal appeals, is to have the appellate court vacate the judgment against him and grant a new trial because he has not had that fair and impartial trial guaranteed him by the constitution, or because some rule of law has been improperly announced to his prejudice. And when his plea for a new trial has been granted, he is no more in jeopardy as to the greater offense, of which it is said he was acquitted, than as to the included offense of which he was convicted; because by his own act he has procured the trial and its attendant judgment to be set aside and held for naught that he may again be permitted to traverse the charge, as in the first instance. In the *Trono* case, it is said in reviewing these conflicting rules:

"In our opinion the better doctrine is that which does not limit the court or jury upon a new trial to a consideration of the question of guilt of the lower offense of which the accused was convicted on the first trial, but that the reversal of the judgment of conviction opens up the whole controversy and acts upon the original judgment as if it had never been. The accused by his own action has obtained a reversal of the whole judgment, and we see no reason why he should not, upon a new trial, be proceeded against as if no trial had previously taken place. We do not agree to the view that the accused has the right to limit his waiver as to jeopardy, when he appeals from a judgment against him. As the judgment stands before he appeals, it is a complete bar to any further prosecution for the offense set forth in the indictment, or of any lesser degree thereof. No power can wrest from him the right to so use that judgment, but if he chooses to appeal from it and to ask for its reversal he thereby waives, if successful, his right to avail himself of the former acquittal of the greater offense, contained in the judgment which he himself procured to be reversed. . . . When the first trial is entered upon he is then put in jeopardy within the meaning of the phrase, and yet it has been held, as late as *United States v. Ball*, 163 U. S. 662, 671 (and nobody now doubts it), that if the judgment of conviction be reversed on his

own appeal, he cannot avail himself of the once-in-jeopardy provision as a bar to a new trial of the offense of which he was convicted. And this is generally put upon the ground that by appeal he waives his right to the plea, and asks the court to award him a new trial, although its effect will be, if granted, that he will be again tried for the offense of which he has been once convicted. This holding shows that there can be a waiver of the defense by reason of the action of the accused. As there is, therefore, a waiver in any event, and the question is as to its extent (that is, how far the accused by his own action may be deemed to have waived his right), it seems much more rational and in better accord with the proper administration of the criminal law to hold that, by appealing, the accused waives the right to thereafter plead once in jeopardy, when he has obtained a reversal of the judgment, even as to that part of it which acquitted him of the higher while convicting him of the lower offense. When at his own request he has obtained a new trial he must take the burden with the benefit, and go back for a new trial of the whole case. It does not appear to us to be a practice founded on solid reason to permit such a limited waiver by an accused party, while himself asking for a reversal of the judgment."

This reasoning is to our minds so cogent that we do not deem it profitable to further extend this opinion by enlarging upon it other than to say it preserves all the constitutional and other rights of both parties to a criminal trial, the state and the accused. The announcement of this rule may disturb the guilty who seek, through the intricate mazes of technical and refined subtleties, to escape punishment for their evil deeds, as in this case, where to take the contrary view would mean that a murderer who admits his crime, and whose only regret is that he was apprehended before his lust for killing was fully satisfied, as he sought a second victim, would be left free to pursue his criminal intent until he had added other victims to his score. Courts should give to all persons accused of crime the benefit of all the law that wisdom has created to shield the innocent from false accusation, but they only bring themselves into ridicule when they seek, through

meaningless technicalities and hair-splitting distinctions, to build up a protecting wall behind which the guilty may avoid the penalty of their misdeeds. It is to be deplored that juries will sometimes so forget their sworn duty as to refuse to hold up violators of the law to the full measure of their misdeeds. Courts should not aid in this miscarriage of justice by creating technical and subtle distinctions in the law, and thus enable the guilty to altogether escape. We cannot control the verdicts of juries in their failure to make true deliverance between the state and the criminal, but we can refuse to extend the farce so as to make it operate as an absolute discharge. Believing that a new trial to one found guilty of a lesser offense should, on his appeal, be held a new trial upon all offenses included within the charge that find sustaining facts in the evidence, we so hold, and adopt such rule for our future guidance. It may not be supported by the greater number of adjudicated cases, but it appeals to us as based upon the best reasoning and soundest judgment. It follows that *State v. Murphy, supra,* and other cases expressing contrary views are hereby overruled.

Because of the error in the improper submission of a verdict for manslaughter, the judgment is reversed, and the cause remanded for a new trial upon the information.

DUNBAR, C. J., ELLIS, MOUNT, CROW, CHADWICK, and PARKER, JJ., concur.