[No. 34572. *En Banc.* July 2, 1959.]

THE STATE OF WASHINGTON, *Respondent*, v. WARREN W. SCHOEL, *Appellant.*[1]

[1]Reported in 341 P. (2d) 481.

*James V. McCabe,* for appellant.

*Ray E. Munson* and *Ronald F. Whitaker,* for respondent.

ROSELLINI, J.—February 21, 1957, Warren W. Schoel was charged, by information, in Yakima county with the crime of murder in the first degree. The jury were instructed that, under the evidence, they could return one of four verdicts: (1) Guilty of murder in the first degree, (2) guilty of murder in the second degree, (3) guilty .of

manslaughter, or (4) not guilty. The jury returned a verdict of guilty of murder in the second degree.

The trial judge granted the defendant's motion for a new trial. The jury upon the new trial found the defendant guilty of murder in the first degree. From the judgment and sentence based thereon, the defendant has appealed.

Upon the new trial the defendant moved that the first-degree murder charge be dismissed for the reason that he had been acquitted of the crime of first-degree murder by the jury's verdict in the first trial, finding him guilty of second-degree murder, and that to retry him upon the charge of first-degree murder would constitute double jeopardy.

The defendant assigns error to the denial of this motion. He forthrightly admits that his theory was rejected in *State v. Ash*, 68 Wash. 194, 122 Pac. 995 (1912), but urges this court to overrule our previous holding in view of the recent case of *Green v. United States*, 355 U. S. 184, 2 L. Ed. (2d) 199, 78 S. Ct. 221 (1957).

The fifth amendment to the United States constitution provides in part: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . ."

The Washington constitution, Art. I, § 9, declares: "No person shall be . . . twice put in jeopardy for the same offense."

In 22 C. J. S. 369, § 238, it is said:

"That no one shall be twice put in jeopardy for the same offense is an ancient and well established doctrine. It is a part of the universal law of reason, justice, and conscience. It is embedded in the very elements of the common law, and expressed in several of its maxims. This universal doctrine was incorporated into the Fifth Amendment to the constitution of the United States which provides that no person 'shall be subject for the same offense to be twice put in jeopardy of life or limb,' and the constitutions of nearly all the states contain a similar provision, which, however, is merely declaratory of the common-law rule; and, where protection is not given by the constitution, it is secured by the common law. So the

plea may be based either on the constitutional guaranty or the common law. The fact that the result of upholding a plea of former jeopardy will be that accused will go without sentence or punishment for an offense to which he had pleaded guilty does not alter his rights or change his position as to his right to plead former jeopardy. . . ."

Justice Black, in speaking for the majority, in *Green v. United States, supra,* sets forth the philosophy of this constitutional guaranty as follows:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

A comparison of the provisions found in the United States constitution and our state constitution with regard to double jeopardy, reveals that the two are identical in thought, substance, and purpose. In a series of cases commencing with *State v. Vance,* 29 Wash. 435, 70 Pac. 34 (1902), this court has adhered to the rule that where the language of the state constitution is similar to that of the Federal constitution, the language of the state constitutional provision should receive the same definition and interpretation as that which has been given to the like provision in the Federal constitution by the United States supreme court. In the most recent case, *State v. James,* 36 Wn. (2d) 882, 897, 221 P. (2d) 482 (1950), we stated:

"The provision quoted from the constitution of this state affords appellant the same protection that he could claim under the Federal constitution. Decided cases referring to the provision in the Federal constitution are in point in connection with questions concerning the similar provision in the constitution of this state."

In *Green v. United States, supra,* it was held that in order to secure the reversal of an erroneous conviction of one offense, a defendant was not obliged to surrender his valid

defense of former jeopardy on a different offense of which he was not convicted and which was not involved in his appeal.

In *State v. Ash, supra,* we held contrary to this rule. The reasoning of the court in the *Ash* case is found in the following excerpt from the opinion:

". . . The right of appeal is a privilege granted by law, and when that right is taken advantage of by a defendant convicted of an included offense, he must accept the privilege with all its attendant results; and one of those results and the one in effect prayed for in all criminal appeals, is to have the appellate court vacate the judgment against him and grant a new trial because he has not had that fair and impartial trial guaranteed him by the constitution, or because some rule of law has been improperly announced to his prejudice. And when his plea for a new trial has been granted, he is no more in jeopardy as to the greater offense, of which it is said he was acquitted, than as to the included offense of which he was convicted; because by his own act he has procured the trial and its attendant judgment to be set aside and held for naught that he may again be permitted to traverse the charge, as in the first instance. . . ."

The conclusion reached by the court was based upon two premises, which on our re-examination we deem erroneous, (1) that appellate review is a privilege, and (2) that the defendant cannot complain of double jeopardy because on a new trial secured at his behest, he is equally in jeopardy as to the offense of which he was acquitted and that of which he was convicted.

■ It is true that under the Federal constitution, appellate review is a privilege; however, the tenth amendment of the constitution of this state guarantees a "right to appeal in all cases." *In re Woods v. Rhay, ante* p. 36, 338 P. (2d) 332 (1959).

■ The doctrine that a person who avails himself of his constitutional right to appeal must of necessity waive another constitutional right, the defense of former jeodardy, renders illusory one of the rights guaranteed by the constitution.

Justice Black in *Green v. United States, supra,* in speaking of the doctrine of waiver, stated:

"Nevertheless the Government contends that Green 'waived' his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a *successful* appeal of his improper conviction of second degree murder. We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. Cf. *Johnson v. Zerbst,* 304 US 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A L R 357. When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice.   . . ."

■ If a defendant in a Federal court, where appellate review is a privilege, does not waive his constitutional defense of former jeopardy by availing himself of that privilege (and the Supreme Court of the United States so held in *Green v. United States, supra*), much less does a defendant waive his defense when he takes an appeal to the supreme court of this state, where the constitution grants to him not a mere privilege but a *right* to have his trial reviewed.

In the first trial, the defendant was charged in an amended complaint in count I with murder in the first degree, and in count II with first-degree assault committed upon the defendant's wife. Upon motion of the defendant, the state was required to elect between these charges and chose to try the defendant on count I, murder in the first degree.

The court defined for the jury murder in the first degree, the included crimes of murder in the second degree, and manslaughter; and in instruction No. 4, the jury was told:

"Under this information, if the evidence shall so warrant, you may find the defendant guilty of murder in the first degree, you may find the defendant guilty of murder in the second degree .or guilty of. manslaughter or .you may find the defendant not guilty accordingly as you find the facts

shall warrant under the law as laid down by these instructions."

The court furnished the jury with forms for a verdict: one form was to be used if the defendant were found guilty of murder in the first degree; one, if he were found guilty of murder in the second degree; one, if he were found guilty of manslaughter; and one, if he were found not guilty.

Pursuant to instruction No. 4, the foreman signed only one form, a verdict of guilty of murder in the second degree.

No other conclusion can be reached than that the jury, by returning the verdict of guilty of the charge of murder in the second degree, did, in fact, return a verdict of not guilty of the greater offense of murder in the first degree. In other words, by finding the defendant guilty of second-degree murder, the jury acquitted the defendant of the higher offense charged, first-degree murder.

This conclusion appears incontrovertible, since the jury, in following the instructions, determined as a matter of fact that the defendant was guilty of no greater crime than that of murder in the second degree. The action of the jury, in fact, was equivalent to the signing of a verdict of not guilty on the charge of murder in the first degree.

If it is the policy of the courts and of the people not to subject a man to a second trial when he has once been acquitted in a fair trial, *a fortiori*, that policy should protect him from a second jeopardy when he has been acquitted of a charge after a trial in which prejudicial error occurred. There is no good reason why he should be required to waive this very valid defense in order to avail himself of a remedy which the constitution gives him as a matter of right—the consideration by an appellate court of his contention that his conviction of a lesser crime was the result of error.

Cases decided by this court prior to *State v. Ash, supra,* reveal that we formerly recognized the validity of the position later taken by the Supreme Court of the United States in *Green v. United States, supra.* In *State v. Robinson,* 12

Wash. 349, 41 Pac. 51, 902 (1895), where the evidence showed that the defendant, who was charged with murder in the first degree as an accessory before the fact, could not have been guilty of manslaughter, of which he was convicted, this court said:

"The legal effect of the verdict in this case acquits the defendant of the higher degrees of homicide, and having concluded that the evidence is insufficient to justify a conviction for manslaughter, the judgment will be reversed and the cause remanded with instructions to discharge the appellant."

And in *State v. Murphy,* 13 Wash. 229, 43 Pac. 44 (1895), there is found the following expression of the proper rule:

" . . . A defendant upon trial for the crime of murder in the first degree could not be again put upon trial for that offense after a general verdict of not guilty; and since the effect as to that grade of the crime of a verdict of guilty of a lower grade is the same as a verdict of not guilty, a verdict of guilty of the lower grade should protect from further prosecution for the higher grade."

*State ex rel. Moorehead v. Chapman,* 64 Wash. 140, 116 Pac. 592 (1911), is in accord. In that case it was held that, upon a trial for murder, in which the defendant was acquitted of first-degree murder by a verdict of manslaughter, the defendant was entitled to bail pending his appeal, under the statute applicable at that time, Rem. & Bal. Code, § 1747, providing that bail must be fixed in all criminal actions except capital cases.

Then, in April, 1912, came *State v. Ash, supra.* The act of the defendant in that case was particularly heinous. He lay in ambush all of one night, the following day, and until nine p. m. of the second night, awaiting a favorable opportunity to kill his victim. He was tried on a charge of first-degree murder, and the jury returned a verdict of manslaughter, from which he appealed, claiming error in that there was no evidence to justify the verdict. This court agreed with his contention, stating that the evidence contained no element of manslaughter but showed that the defendant was guilty of killing a human being with a pre-

meditated design to effect the death of the person killed, without excuse or justification in law. Faced with the necessity of either overruling *State v. Murphy, supra,* and other cases expressing similar views, or allowing the defendant, of whose guilt the court was apparently convinced, to go free, the court chose the former alternative and adopted the doctrine of waiver.

The compelling consideration which motivated the court in departing from its long-established precedent is found on p. 197 of the *Ash* decision. After stating the two rules applicable to the case, one, that a defendant can only be convicted of a lesser degree or of an attempt when there is testimony to sustain such a conviction, and the other, that a conviction of a lesser degree of a given crime is in legal effect an acquittal of the higher degrees, entitling the defendant to a discharge of the higher degrees upon a new trial, the court said:

" . . . It is contended, following the rule laid down in *State v. Robinson,* 12 Wash. 349, 41 Pac. 51, 902; *State v. Murphy,* 13 Wash. 229, 43 Pac. 44, and *State ex rel. Moorehead v. Chapman,* 64 Wash. 140, 116 Pac. 592, that the verdict of manslaughter is, in legal effect, an acquittal of the higher degree of homicide; and appellant cannot again be tried for those crimes without being twice put in jeopardy for the same offense; and as there was no evidence upon which to justify a conviction of manslaughter, the result must be the discharge of the defendant. One of these rules must be departed from, or else in this case, as in many others where the verdict results from an erroneous view of the law by the court below and the submission of improper verdicts, the appellate court, in correcting the error and thus seeking to do justice as between the state and the defendant, must lay down a rule which results in the greatest injustice, and turns loose murderers and other violators of the law to prey upon other victims of their criminal lust. . . ."

It is interesting to note that the fear expressed by the court was not shared by the jury on the retrial of Ash, for by a special verdict[2] he was found not guilty because of in-

[2]Special verdict, *State v. Ash,* Spokane County, Superior Court, Cause No. 4380 (1912).

sanity or mental irresponsibility existing at the time of the commission of the crime. The jury further found that he was not insane or mentally irresponsibile at the time of trial and that he was safe to be at large. This verdict gives additional credence to the proposition that when a jury finds a defendant guilty of a lesser degree of a given crime, it acquits him of the higher degree or degrees.

The rule in California has been that a plea of former jeopardy would apply if a defendant was convicted of a lesser but included crime, but would not apply if charged with a certain degree of a crime and was convicted of the lesser degree of the same crime. The reasoning of the court appears to be that the crimes which are divided into degrees do not designate separate offenses but operate only for the purpose of fixing penalties. However, in *Gomez v. Superior Court,* 50 Cal. (2d) 640, 328 P. (2d) 976 (1958), the California court guided by *Green v. United States, supra,* held that the doctrine of former jeopardy would apply in both instances, stating:

"It appears to us that if the spurious distinction made by the California cases is perpetuated in the case at bar we would be giving our constitutional prohibition against twice in jeopardy a 'narrow, grudging application' unsupported by either logic or reason."

The courts which do not follow the reasoning of *Green v. United States, supra,* and of our holdings prior to *State v. Ash, supra,* are concerned, and rightly so, that a guilty person may escape punishment. Conversely, courts that apply the *Green v. United States* case are convinced that it is better to have a rule which occasionally permits a guilty person to escape punishment than to have one that may place an innocent person twice in jeopardy of being convicted.

The other assignments of error have been considered; and we find no reason to disturb the trial court's ruling.

We hereby overrule *State v. Ash, supra,* and reinstate the rule of *State v. Murphy, supra,* which is in accord with the views of the United States Supreme Court, and grant to

the defendant his constitutional right to assert the defense of former jeopardy.

The judgment on the verdict of first-degree murder is therefore set aside and the cause is remanded for a new trial.

WEAVER, C. J., FINLEY, FOSTER, and HUNTER, JJ., concur.

OTT, J. (dissenting)—". . . nor shall any person be subject for the same offense to be twice put in jeopardy . . .". Amendment 5, United States constitution.

Webster's New International Dictionary (2d ed.), 1956, defines the word "jeopardy" as "Exposure to death, loss, or injury; hazard; danger." The dictionary states that the word is synonymous with peril or risk. Former jeopardy presupposes a former trial or risk. Hence, any second trial places the accused in peril or risk or jeopardy for a second time, whether it is occasioned by a jury's failing to agree upon a verdict or by reversible error in the first proceeding. The courts in this country, without exception, have determined that a jury disagreement is not a completed trial or completed risk, because there is no final determination of the jeopardy and, hence, the original jeopardy continues until it is terminated, either by a verdict of acquittal or one of guilty.

In most jurisdictions, when a *retrial* is granted *at the request of the accused,* because of error in his former conviction, the retrial is not considered a violation of the constitutional provision relating to former jeopardy for one of two reasons, either (1) the plea of former jeopardy was waived by the accused when he himself requested a second trial, or (2), since the former jeopardy was not legally concluded, the retrial is a continuation of the original risk.

For forty-seven years, it has been the law of this state that, when one is charged with murder in the first degree (which includes the offenses of second-degree murder and, under certain circumstances, manslaughter), and is convicted of the included offense, and the judgment has been annulled *at the request of the accused,* the entire proceed-

ing is nullified and the retrial opens the whole controversy as though the original trial was never had. State v. Ash, 68 Wash. 194, 122 Pac. 995 (1912).

This interpretation of the meaning of a new trial is fair, both to the accused and to society. True, the accused may be convicted, upon the new trial, of the homicide having the greater penalty, but he likewise has an opportunity to gain an acquittal. Society, on the other hand, has the protection afforded it by any verdict resulting from a fair and impartial trial.

The protection offered both the accused and society is aptly demonstrated by the facts of State v. Ash, supra. In this case, the accused waited in ambush for two days to kill his victim. He was charged with first-degree murder. He entered a plea of not guilty, and a special plea of not guilty because of mental irresponsibility at the time of the killing. The court instructed the jury on murder in the first and second degrees and manslaughter, and on the defense of not guilty, as well as on the special plea of mental irresponsibility. The jury found Ash guilty of manslaughter. On appeal, this court reversed the conviction and held that there was no evidence to support the instruction on manslaughter, and that Ash was guilty of either first-degree or second-degree murder, or was not guilty, or was excused from his act by reason of mental irresponsibility.

Appellant Ash contended, as the majority now determine, that the verdict of the jury was an implied "not guilty" as to first-degree and second-degree murder, and that society had had its day in court on those issues. The plea of double jeopardy was fully considered by this court and rejected. The reasoning was that the error permeated the entire proceeding, and that, when one who stands convicted of an offense requests a new trial, the words "new trial" mean that the constitutional prohibition is waived by the accused's request for a second trial, and that the accused is granted precisely that which he requested—a new trial as though the first was never had. This court, in the Ash decision, was fully aware that some jurisdictions supported

the opposite view, but concluded that the majority view "appeals to us as based upon the best reasoning and soundest judgment."

At the new trial in the *Ash* case, the jury found that the accused had committed the act alleged, but found him not accountable for his misdeed because of mental irresponsibility existing at the time of the homicide. He was found to be sane at the time of trial and safe to be at large, which was tantamount to acquittal.

If we apply the present reasoning of the majority to the *Ash* case, society had had its day in court on the charge of first-degree murder, and it should follow that Ash had had his day in court on his special defense of insanity. The issue of Ash's competency was fully determined in the original trial, and he was found to be sane, "by implication," as to all degrees of the homicide charged. No error was assigned by appellant Ash to any part of the trial that involved the issue of his alleged incompetency. Ash was permitted to have another jury pass upon his competency *only because the entire first proceeding was nullified*, and a new trial granted as though the first was never had.

Why should we now abandon the rule of *stare decisis* and adopt a new court-made law? The majority opinion leans heavily upon a recent *five-to-four* decision of the supreme court of the United States (*Green v. United States,* 355 U. S. 184, 2 L. Ed. (2d) 199, 78 S. Ct. 221 (1957)), and holds that, since that court has recently overruled its *Trono* case (the decision which was followed by this court in the *Ash* case), we should now conform to the United States supreme court's new decision on the subject.

In my opinion, the reasoning of the dissent in the *Green* case, written by Justice Frankfurter and concurred in by Justices Burton, Clark, and Harlan, is "based upon the best reasoning and soundest judgment," rather than that expressed in the majority opinion. It is stated in the dissent that

" 'the constitutional provision was really never intended to, and, properly construed, does not cover, the case of a judgment under these circumstances, which has been an-

nulled by the court *at the request of the accused* . . . '
199 U. S., at 534." (Italics mine.)

This reasoning is buttressed by historical references to
the debates at the time the former jeopardy provision was
written into the constitution by amendment, and by strong
arguments for the preservation of the rule of *stare decisis*.

Homicide is the unlawful killing of a human being. When
the framers of the constitution wrote into it the amend-
ment forbidding double jeopardy, they were concerned
solely with jeopardy as it related to the offense (homicide).
They were not concerned with the statutory penalties or
degrees of homicide, which relate only to the manner in
which the unlawful killing was accomplished. In my
opinion, this amendment to the constitution was never in-
tended to forbid a retrial, *when the retrial is requested by
the accused.* In the absence of good reasons for changing
our established decisional law, we are not justified in over-
ruling the *Ash* case simply to conform to the recent think-
ing of the supreme court of the United States.

I agree that there is room for an opposite view on the
subject. As stated in *Green v. United States supra,* of the
thirty-six states in the Union that have decided this issue,
nineteen permit retrial for the homicide including the
greater penalty. We have been aligned with these nineteen
states for forty-seven years, and this is not a case of first
impression in this state. California has had the opposite
view since 1854. *People v. Gilmore,* 4 Cal. 376. The ma-
jority's citation of a recent California decision does not in-
dicate an abandonment of California's former decisions, but
a reaffirmance of them.

Since the majority opinion expresses no *new* reasons why
the rule announced in the *Ash* decision should be aban-
doned, that were not discussed in that case and rejected by
this court, I am opposed to the abandonment of the rule of
*stare decisis* simply because the court is now composed of
other men. We should cling firmly to a policy of judgment
by law, not by men.

MALLERY, HILL and DONWORTH, JJ., concur with OTT, J.