[No. 8827.    Department Two.    January 6, 1911.]

R. F. HAGGARD, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

MASTER AND SERVANT—VICE PRINCIPALS—EVIDENCE OF AUTHORITY —ADMISSIBILITY. In an action against a city for injuries sustained by an employee in an electric light station, evidence of the acts of persons claimed to be in charge is admissible to show their authority to give orders and represent the city.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE—ADMISSIBILITY—STATEMENT OF OPINIONS. In an action for personal injuries sustained by a city employee in an electric light station, plaintiff's evidence to the effect that he would not have used a passageway had he known that it was dangerous, is not objectionable as the statement of an opinion, but is merely a statement of his ignorance of the dangers and a reaffirmance of his complaint alleging due care.

WITNESSES—EXPLANATION OF TESTIMONY. Upon a second trial of a case, it is not objectionable to allow a witness to explain one of his answers at the former trial by stating how he understood the question.

MASTER AND SERVANT—NEGLIGENCE—EVIDENCE—CUSTOM IN OTHER PLANTS. In an action by an inexperienced youthful employee in a city electric light station, for injuries sustained while working, without instructions, in the high tension room of the plant, it is proper to show whether such is the customary practice in plants of similar character, as tending to show negligence.

NEW TRIAL—GROUNDS—MISCONDUCT OF JURORS—SHOWING. A new trial should not be granted upon the affidavit of appellant's attorney that articles had been published in a newspaper tending to influence

[1]Reported in 112 Pac. 503.

the jury, where he simply stated that he was informed and believed that a majority of the jurors had read the articles, and there was no evidence that the jurors had read them.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $16,333 for electric burns received by a boy eighteen years of age, is not excessive, where he was terribly burned, skin grafting was resorted to, his face was disfigured and deformed, the flesh from one of his legs sloughed out, and his sight was impaired and cataracts induced, which may result in total blindness.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 8, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in an electric lighting plant. Affirmed.

Scott Calhoun and James E. Bradford, for appellant.

Higgins, Hall & Halverstadt, for respondent.

DUNBAR, J.—The respondent alleged in his complaint that, while working as a servant for appellant at and in the substation of its lighting plant in the city of Seattle, he being at the time of the age of eighteen years, was ordered by one McKean, whom he alleges was the agent of defendant with authority to order and direct the plaintiff in his work, to wipe up some oil under the oil switches (definitely described in the complaint) and that it was necessary for him, in carrying out said orders, to go through a certain narrow passageway in close proximity to such switches; that a person passing through said passageway was exposed to great danger from shocks of electricity, which might be received without actual contact with the oil switches or by contact with the insulators thereon; that he was ignorant of this fact, and ignorant of all matters concerning electricity; that he did not know, and had not been informed, that such passageway was dangerous, or that shocks might be received therein without actual contact; that this knowledge was possessed by the defendant and that, knowing the dangers incident to the place, it sent the plaintiff there to perform the labor which

he was ordered to do, without warning and without instruction; and that while so working, ignorant of the dangers aforesaid, he was burned and injured by the electricity passing over the switches, describing the injuries which he received. The complaint is long and definite, but we have stated the substance of it. The damages alleged were $20,000. The defendant denied negligence on its part, and charged the plaintiff with contributory negligence and assumption of risk. Upon the issues so framed, the cause was tried by a jury, and verdict was returned for $16,333. Motion for judgment notwithstanding the verdict and motion for a new trial were overruled. Judgment was entered, and appeal followed.

There are fifty-four assignments of error presented here. We will notice those which we consider pertinent. It is insisted that the court erred in admitting testimony relative to the authority of McKean and Moores. It is insisted that there is no evidence that either of them had authority in any way to bind the city, and no authority to give orders. The witness testified that McKean had charge of the sub-station and all the men in it, and that Moores, who was an operator, gave orders in the presence of McKean, and ordered the respondent, in McKean's presence, to use waste in wiping up the oil. He testified further, over appellant's objection, as follows:

"Moores was ordering the men about. McKean had charge of the sub-station and all the men in it, and he ordered everybody around as far as I could see, and everybody did what he told them to."

Conceding the law to be as announced in the many cases cited by learned counsel for appellant, we think the testimony was admissible, and that the best possible way to prove who was actually in charge was to prove the acts of those who were charged with principalship. Contractual relations are sometimes hard to prove by opposing litigants, and the respondent had a right to introduce the best testimony he

could command. . At least, the testimony offered was some evidence of principalship, and hence was admissible. Assignments 30 and 31 are grouped with assignment 2 just noticed, and as appellant has made no especial argument to sustain them, we conclude they will fall within the rule just discussed.

It is urged that the court erred in allowing respondent to state that he would not have passed through the passageway had he known it was dangerous, and it is appellant's contention that this was one of the questions for the jury to determine from the facts proven, and should not have been testified to by the respondent as a question of opinion. This was nothing more, in effect, than a statement that he did not know of the danger, and this, as counsel for respondent aptly says, amounts simply to a reaffirmance of the legal intendment from the statements of his complaint, that he was not guilty of contributory negligence; and hence it was without prejudice. Neither do we think any error was committed by permitting the witness to explain an answer which he made to a question on a former trial, by stating how he understood the question which was then asked him.

Assignments 6, 8, 9, and 27 are to the effect that the court erred in allowing the witness McKean to answer, over appellant's objection, certain questions propounded. The assignments are so numerous in this case and the questions objected to so many, that it will not be practicable to discuss them all at length, but we will select one question which practically embraces the principal objections to all of them:

"Q. Is it the practice in plants of the character similar to this plant in question to send inexperienced boys, we will say of the age of eighteen years, who have had no technical education in electricity and who have had no instruction as to its characteristics and methods of operation and who have had no experience in methods of handling it, to work about such switches as that battery of switches in the northeast corner room—of the high tension room of this plant, when the wires are carrying high voltage; that is, 25,000 voltage?"

The objection was as follows:

"By Mr. Bradford: I object to that question and all questions eliciting this line of evidence, for the reason that it is incompetent, irrelevant and immaterial, not within the issues here, asking for a conclusion of the witness, and asking for testimony on an issue of fact which is the exclusive province of the jury to pass upon. It could not in any way bind the city. What somebody else does at some other time or place. For the further reason that it is indefinite as to time, place or circumstances. The Court: On the last ground I think the objection is well taken."

The succeeding questions eliminated the objection as to time, and were asked with reference to the time at which the accident occurred. From the whole testimony on this branch of the case it affirmatively appears that there was no prejudice, and that the inadvertence, if there was an inadvertence, in the first question could not in any possible way have affected the merits of the case. So far as the objection that the questions were not specific enough is concerned, and the argument to sustain the objection that there is a great variety of capacity and discretion of boys of the same age, it is apparent that it would be impracticable to frame a question disclosing the distinguishing capacity of the particular child in all particulars. If it was out of the ordinary, it could be shown in defense. On the general question of the admissibility of testimony showing custom in such cases, this court said, in *Crooker v. Pacific Lounge & Mattress Co.*, 34 Wash. 191, 75 Pac. 632, referring to this question:

"As to the second objection, we think the proof complained of was relevant on the question whether the appellant had exercised reasonable care in not following a custom in guarding ripsaws; not that a compliance with the particular custom would necessarily exonerate, or non-compliance necessarily charge it with negligence; but its conduct in that regard was a material fact for the consideration of the jury, in connection with the other facts and circumstances developed by the evidence in the case;"

citing *Bodie v. Charleston etc., R. Co.*, 61 S. C. 468, 39 S. E.
715, where the court said:

"It was for the jury to say whether such usual or custo-
mary method was such as a careful and prudent person should
adopt under the circumstances."

In *Sipes v. Puget Sound Elec. R.*, 54 Wash. 47, 102 Pac.
1057, it was said:

"The ruling of the court admitting testimony tending to
show the flagging system in use on other roads of like charac-
ter is next assigned as error. The standard of due care is the
conduct of the average prudent man. It would doubtless have
been competent for the appellant to show that its flagging
system was the one in general use on other roads of like
character throughout the country, and it would seem equally
competent for the respondent to prove that a like flagging
system was not in use elsewhere. Such testimony would not
be at all conclusive against the appellant, but it was proper
for the consideration of the jury;"

citing *Myers v. Hudson Iron Co.*, 150 Mass. 125, 22 N. E.
631, 15 Am. St. 176, where it was said:

"In order to aid the jury in determining whether the de-
fendant had exercised reasonable care in providing and main-
taining the machinery actually in use, it was competent to
show what other kind of machinery or appliances were used
elsewhere, and might have been used at the shaft."

The admission of such evidence was indirectly approved in
*Thomson v. Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588.
The latest expression of the courts upon this subject will be
found in *Shaw v. Woodland Shingle Co.*, ante p. 56, 111
Pac. 1070. All that was decided in *Carlson v. Wilkeson
Coal & Coke Co.*, 19 Wash. 473, 53 Pac. 725, cited by appel-
lant, was that the boy's size, age, previous experience, strength
and intelligence could properly be considered by the jury.
But the admission of the testimony objected to in this case
did not in any way deprive the defendant of submitting such
testimony for the consideration of the jury.

In support of a motion for a new trial, an affidavit was made

by the attorney for the appellant, to the effect that certain articles had been published in the city newspapers which tended to influence the jury to the prejudice of the appellant; that eight members of the jury were citizens of Seattle; that the papers publishing this article had a general and popular circulation in the city, and that he was informed and believed that a majority of the jurors actually read said articles. There was no testimony of the jurors showing that they had read the articles, and no testimony other than the affidavit mentioned. Under the authorities generally, the showing of prejudice would not be sufficient; but the question has been squarely decided to that effect in *State v. Murphy*, 13 Wash. 229, 43 Pac. 44, and *State v. Simmons*, 52 Wash. 132, 100 Pac. 269. We have examined all the errors assigned, but without specifically discussing them, we think they are too technical to in any way affect the merits of the case.

We are unable to endorse the criticism on the instructions of the court. Those given properly stated the law, and those refused had either been given in substance or did not properly present the law. Both sides had their respective cases fairly presented in the instructions. We are unable to discover any error in admitting or rejecting testimony. The two meritorious questions (1) whether the plaintiff was guilty of neglect, including the question of whether he had been instructed in regard to his duties and notified of the dangers of the place, and (2) whether the plaintiff was guilty of contributory negligence, were fairly submitted to the jury, whose province it was to determine them, and it has determined them both, on competent and legally sufficient testimony, against the contentions of the appellant.

It is lastly contended that the verdict is excessive, indicating passion and prejudice on the part of the jury. We have examined the testimony on this phase of the case most carefully, and while it is true that this is a large verdict, it is also true that the injury sustained was terrible and lasting. The respondent was burned about the face and head until, as some

of the witnesses testified, he did not resemble a human being, but his face looked like a big piece of meat. The flesh was burned off the back of his hand, and his arm below the elbow was severely burned. One of his legs was so deeply burned that a portion of the flesh sloughed out, and skin grafting had to be resorted to to cover the area burned. He was confined to the hospital for over two months immediately succeeding the accident, before the skin grafting was resorted to. The thigh is left with a depression in it, and his face is left deformed. In addition, his sight is impaired to the extent that he had to give up work that did not require very acute vision, and that according to the testimony, the growth of cataracts has been induced, which are steadily maturing. The testimony shows that cataracts will ordinarily mature in from five to ten years, when total blindness will ensue unless an operation for its removal proves to be successful; and what is termed a successful operation is where the patient is left with a vision ranging from one-half to one-twelfth the normal, and that there is about an even chance that the operation will not be successful in any degree. Considering the pain and suffering endured with the permanent injuries sustained, we are unable to say that the verdict is excessive.

The judgment will be affirmed.

RUDKIN, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.