## DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 8947. Department One. January 28, 1911.]

MICHAEL MYHRA, *Respondent*, v. CHICAGO, MILWAUKEE AND PUGET SOUND RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—DEFECTIVE CARS—ASSUMPTION OF RISKS—PROMISE TO REPAIR. There is a sufficient complaint and promise to remedy a defect to relieve a railroad brakeman from the assumption of risks in attempting to give signals from the end doors of a box car, which had neither platforms nor brakes, and the side doors of which were nailed up, where it was obvious that it was not a safe place for giving signals, and the brakeman asked for the removal of the boards on the side doors in order to give "a chance to stay there and give signals and also get out if necessary," whereupon the master's terminal engineer replied that the use of the car was only temporary, that they would hold out the first small box car and "we will fix it up."

SAME—AUTHORITY TO MAKE PROMISE—VICE PRINCIPAL. A railroad employee styled a terminal engineer, having charge of material yards, the loading of cars, and the direction of engineers and conductors, and regarded by the crew as the officer in charge of the train, is a vice principal and has authority to promise to remedy a defect in a car on a complaint made by a brakeman; especially where the car was furnished for particular service in construction work on application made to him by the conductor.

SAME—DEFECTIVE CARS—NEGLIGENCE—QUESTION FOR JURY. A box car without platforms or brakes, with the side doors nailed up, cannot be said, as a matter of law, to be reasonably safe for construction work requiring the giving of signals from the end doors, where cabooses with end platforms and railings or cars with side doors and ladders are commonly used in such work.

[1]Reported in 112 Pac. 939.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A brakeman, compelled to give a signal from the end door of a box car without any platforms, is not guilty of contributory negligence, as a matter of law, in stepping upon the coupler instead of the grab irons, which would have been better and safer, where he and others testified that the coupler gave a firmer and safer foothold.

SAME. In such a case, it cannot be said that he should have given signals from the other end of the car, where there was evidence that that would have been more dangerous, nor from the side windows, when it was doubtful if they could have been opened.

EVIDENCE—EXPERTS—OPINIONS. It is not error to allow physicians, who made an examination of plaintiff's condition, to express opinions based upon subjective symptoms, where they were not permitted to testify to any statements made by the plaintiff or as to any of his acts within the control of his will power.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action for personal injuries, an instruction stating the measure of damages, "even though the amount is for a large sum," while objectionable, is not necessarily prejudicial, where the amount was limited to the sum claimed in the complaint.

DAMAGES—PERSONAL INJURIES—EARNING CAPACITY—PROBABLE PROMOTION. In an action for personal injuries sustained by a railroad trainman, an instruction allowing the jury to consider evidence of the probability of his promotion and a consequent increase of wages is not prejudicial.

TRIAL—INSTRUCTIONS AS A WHOLE. Objection to particular instructions cannot be urged where the instructions as a whole fairly and correctly state the law of the case.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $11,250 for injuries sustained by a railroad brakeman forty-one years of age, in good health, earning $80 to $90 a month, and who had earned $100 to $120 as a conductor, is not excessive, where there was competent evidence that his sexual vigor was impaired and that he will never be able to perform manual labor, and that his body is out of alignment and his injury most serious.

Appeal from a judgment of the superior court for King county, Main, J., entered February 21, 1910, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by a railway brakeman in a fall from a car. Affirmed.

*H. H. Field* and *Geo. W. Korte*, for appellant.

*Arthur E. Griffin*, for respondent.

Gose, J.—The plaintiff brought this action to recover damages for personal injuries sustained while in the service of the defendant. This appeal is prosecuted from a verdict and judgment in plaintiff's favor.

The essential facts are that the respondent, who had had about fifteen years' experience as a railway brakeman and about five years' experience as a railway conductor, sustained a serious injury on the 7th day of December, 1908. At that time he had been employed by the appellant as a brakeman for some four or five weeks. He was injured by falling, or being thrown, from a car while attempting to give the engineer a stop signal.

The train crew consisted of the conductor, engineer, fireman, and one brakeman beside the respondent. They were engaged in hauling material from Seattle to the Puyallup river, for the construction of a bridge at the latter point. The road was being used for construction work only. Flat cars were used for carrying the material. When the accident occurred, the flat cars had been detached and the train, consisting of the engine and one box car, was returning to Sumner for the night. The accident happened near the end of a long trestle, and on a descending grade of about one per cent. The box car was in front of the engine. The train was near the switch, and the respondent had been told by the conductor to give the stop signal at that point, so that the car could be switched and transferred to the rear of the engine. The car had two or three side windows, and a door upon each side and in both ends. The side doors had been closed by nailing 1x12 boards across them. The evidence is conflicting as to whether the windows were closed. There was no platform or railing upon either end of the car. At both ends of the car there was a door sill six or eight inches in width.

The respondent testified that, preparatory to giving the signal, he stepped to the front end of the car with a lantern upon his right arm, took hold of the door casing, put the left foot upon the draw head or coupler, which was some

four or six inches below the door sill, took hold of the grab iron to the right, placed his right foot upon the lower grab iron, and that, in swinging around toward the car, his foot slipped from the grab iron or climber, and he was thrown beneath the car and crushed and mangled by the tender to the engine. The box car had been in use three or four weeks at the time of the accident, and the respondent was familiar with its deficiencies. It had been furnished originally as a sleeping car.

He bases his right to recover upon an alleged promise to substitute a better car. The appellant, upon this branch of the case, makes two principal contentions: (1) It asserts that the evidence does not tend to show the essential elements of a complaint and a promise; and (2) that the promise, if any, was not made by one having authority to represent it in that behalf. The court instructed the jury:

"You are instructed that before the plaintiff can avail himself of any promise in respect to the said car, claimed by him to have been made by the defendant, he must prove by a fair preponderance of the evidence that said car was defective and unsafe for the purposes for which it was being used; that the plaintiff objected to the use of said car and complained to the defendant that his personal safety was in imminent danger; that in pursuance of said complaint the defendant promised plaintiff to substitute said car with a safer car; that plaintiff relied upon said promise, and that said promise was made by an authorized agent of said company."

The respondent further testified that, a short time after he entered the service of the appellant, he had a conversation with a Mr. Osgood, its terminal engineer, in which the respondent suggested to him that the boards should be removed from the side doors so that they could be opened, and "that would give us a chance to stay there and give signals, and also to get out if it was necessary;" that the latter replied that the appellant's use of the car was only temporary; that it did not belong to it, but that "we will hold out the first box car," or that "we [meaning the crew] could hold out the first

small box car—if we saw any small box car come to the coast —hold it out and they would fix it up for a caboose;" that he said, "We will fix it up." Upon cross-examination, the witness further stated that Osgood, the conductor, and himself were in the car when the conversation took place, and that "they were talking about how the car was there and such like."

We have somewhat hesitatingly reached the conclusion that the complaint and the promise fulfill the requirements of the law as defined in the instruction. It is obvious from what has been said that the car when in motion was not a safe place for giving signals. The conversation occurred in the car, between two men experienced in railroading. They both knew that the car had neither platform nor brakes. Osgood knew that the brakeman was the signalman, and that the giving of signals from either end of the car when the car was in motion was dangerous. When the respondent said to him that the removal of the boards and the opening of the door, "would give us a chance to stay there and give signals and also to get out if it was necessary," he knew that the complaint had reference to the hazard incurred by the brakeman in giving signals. The complaint was made on behalf of himself and the other brakeman. It is said that he did not point out the particular peril to be avoided. The jury, however, was warranted in inferring that this was known to Osgood. They were talking about a car the defects of which were well known to them. The jury had a right to infer that the conversation was not altogether without purpose. That which may be reasonably inferred from a fact stated is as legitimate evidence as the statement itself. The respondent testified that he was apprehensive of attempting to signal from the ends of the car, and that he relied upon the promise to substitute another car. We said, in *Alkire v. Myers Lumber Co.*, 57 Wash. 300, 106 Pac. 915, quoting from 1 Labatt, Master & Servant, § 421:

"It is not necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the

defects, nor need there be a formal notification that he will leave the service unless the defect be removed or remedied. It is sufficient if, from the circumstances of the case, it can be fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise. It is ordinarily for the jury to say whether the servant's reliance on the promise by the master induced him to continue work."

The true criterion is aptly stated in *Thorpe v. Missouri Pac. R. Co.*, 89 Mo. 650, 2 S. W. 3, 58 Am. Rep. 120, as follows:

"The dependent position of servants generally makes it reasonable to hold any notice on their part sufficient, however timid and hesitating, so long as it plainly conveys to the master the idea that a defect exists, and that they desire its removal. That the real question to be determined in each case is, whether, under all the circumstances, the master had a right to believe and did believe that the servant intended to waive his objections to the unfitness of his fellow-servant or the defect in the materials provided for the work."

See, also, *Rothenberger v. Northwestern Consol. Milling Co.*, 57 Minn. 461, 59 N. W. 531; *Gulf C. & S. F. R. v. Donnelly*, 70 Tex. 371, 8 S. W. 52, 8 Am. St. 608; *Anderson v. Seropian*, 147 Cal. 201, 81 Pac. 521.

In the *Rothenberger* case, it was said that these are questions of fact rather than of law, and consequently for the jury, "at least, if not entirely free from doubt." A review of the cases cited by the appellant would not be profitable. Suffice it to say that they are either based upon facts essentially different from the facts in this case or announce a principle at variance with the view adopted by this court in the *Alkire* case.

The court instructed the jury that the respondent must prove by a preponderance of the evidence that the promise was made by an authorized agent of the appellant. It is stoutly urged that he failed to sustain this burden. The weight of the evidence was, of course, for the jury. The only question for us to determine is whether there is competent evi-

dence to support the verdict in this particular. Upon this phase of the case, we are free from doubt. It is shown that Osgood was styled a terminal engineer. However, he had charge of the material yards, the loading of the cars, and directed the conductor of the train when and where he should take the material. The conductor looked to him for directions, and he was regarded by the entire crew as the officer in charge of the train. Moreover, it was upon the application of the conductor to him that the particular car was furnished at an earlier date. Osgood says that he acted only as an intermediary. However this may be, he got results. He says further that the superintendent and trainmaster controlled the distribution of the cars. The respondent says that the trainmaster furnished the car from which the respondent fell. The trainmaster testified that he did not have authority to secure a coupler for use as evidence. It is significant that the conductor mailed notice of the accident to Osgood. As we said in *State v. Pioneer Ins. Ass'n*, 55 Wash. 51, 104 Pac. 185:

"A corporation can act only through its agents, and they must be held to have such power as inheres in the duties they are assigned to perform."

We think that the jury were warranted in concluding that Osgood's agreement to furnish a better car was a mere incident to the general work in which he was engaged. *Haggard v. Seattle*, 61 Wash. 499, 112 Pac. 503.

It is also urged, that the facts show that the car was reasonably safe for the use to which it was put; that like cars are ordinarily used for construction work; and that the promise to substitute a safer car cannot be made the basis of an action for damages. This view cannot be sustained. There is competent evidence that cabooses with end platforms and railings, or cars with side doors and ladders, are commonly used in construction work.

It is said also that the respondent was guilty of contributory negligence in stepping upon the coupler or draw head.

There is evidence that the safer and better way would have been to have stepped upon the grab irons only. However, the respondent testified that the coupler gave him a firmer and safer foothold, and in this respect he is corroborated by other witnesses. The question of contributory negligence in this respect was therefore for the jury.

It is also contended that the respondent could have given signals from the windows or the other end of the car without incurring danger. There is evidence, however, tending to show that giving a signal from the end of the car next the engine would have been attended with greater danger than the method pursued. It is said, however, that the photographs in the record disprove such evidence. There is abundant evidence that, to have signalled in that way, he would have been required to expose his body between the car and the moving engine, holding to the door casing with one arm and signalling with the other. Whether such method was safe and proper was, under all the evidence, a question for the consideration of the jury. Nor can we rule, as a matter of law, that he should have signalled from the windows. The evidence leaves it doubtful whether the windows could have been opened. Moreover, there is competent evidence tending to show that signals are not given from car windows.

Certain physicians, who examined the respondent at the request of his counsel for the purpose of ascertaining his condition and not for the purpose of treating him, testified to the condition which they found. They admitted that their opinions were based upon both subjective and objective symptoms, as tested by their experience and observation. They were not, however, permitted to testify, either as to the statements made to them by the respondent or as to any of his acts within the control of his will power. It is insisted that it was error to permit them to express an opinion obtained from subjective symptoms. *Chesapeake & O. R. Co. v. Wiley* (Ky), 121 S. W. 402, and *Etzkorn v. Oelwein* (Iowa), 120 N. W. 636, are cited. In the *Wiley* case, the physicians who ex-

amined the injured party, not for the purpose of treatment or advice, were permitted to state in detail the symptoms which he described. They also testified that their information was based upon his statements of his symptoms. It was held that his statements made under such conditions were self-serving, hearsay, and inadmissible, and that opinion evidence founded upon such bases should have been excluded. In the *Etzkorn* case, a witness was permitted to state that the injured party said to her, that "her limbs hurt her; her side hurt her; she felt dizzy." This was held to be hearsay and inadmissible. In both these cases, however, it is said that a witness may testify to involuntary declarations, expressive of present pain and suffering, made within his hearing.

The court instructed the jury:

"If you find from a fair preponderance of the evidence that the plaintiff is entitled to a verdict against the defendant your verdict should be for such a sum as will fully and fairly compensate the plaintiff for the injuries received, as alleged in his complaint and shown by the evidence, even though the amount is for a large sum of money."

The point is pressed that the phrase, "even though the amount is for a large sum," worked prejudice to the appellant. It is said that, "it is the instruction of an advocate and not of a judge." Under our practice, the pleadings are sent to the jury room. The complaint alleges damages in the sum of $24,750. The court had instructed the jury that damages could not be awarded in excess of that sum. While the expression was not a happy one, and its use in such cases is not to be commended, we cannot think it was prejudicial. "Damages," in general legal acceptation, means compensation for the loss incurred or the injury sustained in the given case. This is ordinarily true whether that loss or injury be large or small, and an instruction of this kind would be correct.

The court also instructed the jury:

"If you should find from the evidence that the plaintiff was a trainman of experience and in line for promotion, you have

a right to consider these facts in determining the amount of damages to be awarded to him if you find in his favor."

In criticism of this instruction it is argued that promotion is dependent upon so many and varied contingencies that it left the jury to wander in the field of conjecture and speculation. The testimony on this question, admitted without objection, was as follows:

"Q. What position did you hold with the Columbia & Puget Sound in regard to being in line for promotion? A. When I came back from the north, I got back as brakeman and was told that I would get the first train they had a chance to give me. I would get the run when my turn came. Q. What did you know as to whether or not there were others ahead of you in service entitled to promotion before you were, upon the Columbia & Puget Sound? A. I believe there was one or two men ahead of me that I had to wait for."

In *Richmond and Danville R. Co. v. Elliott*, 149 U. S. 266, cited by the appellant, the plaintiff was permitted to give evidence in respect to what he thought as to the probability of his promotion and a consequent increase of wages to a stated amount. In condemning that character of testimony as creating a problematical and uncertain basis for damages, it was said:

"Of course, there are possibilities and probabilities before every person, particularly a young man, and a jury in estimating the damages sustained will doubtless always give weight to those general probabilities, as well as to those springing from any peculiar capacities or faculties."

We do not think there was any error in the instruction.

There are many other criticisms of the court's instructions which we cannot discuss without an undue extension of the opinion. Suffice it to say that they are technical, and merely attack the phraseology of the whole or some part of a particular instruction. We have repeatedly held that, if the instructions as a whole fairly and correctly state the law of the case, there is no error. The instructions cover some twenty-three typewritten pages. It follows that there are needless

repetitions and minor inaccuracies.   The issues in cases of this character are usually few and simple, and it would seem that the jury would have a better understanding of the law of the case if they were less elaborately instructed.

There was a verdict for $11,250, which the trial court declined to reduce.   It is finally insisted that the damages awarded are excessive.   The respondent was forty-one years of age and robust at the time of the injury.   His life expectancy was 27.45 years.   His earnings as a brakeman were from $80 to $90 a month.   As a conductor he had earned $100 to $120 a month.   There is competent testimony that his sexual vigor is impaired, and that he will never be able to perform manual labor.   There is a sharp conflict in the evidence as to his ability to work at some time in the future. Some of the physicians expressed the belief that there will be a practical recovery, whilst the physicians who testified for the appellant gave it as their opinion that he will never be able to work.   The trial began more than a year after the injury occurred, and continued for five days.   The respondent at all times sits and walks with his body drawn to one side. The appellant insists that the position is simulated.   Both the jury and the trial court had ample opportunity to observe him, and it is apparent that they were of the opinion that his body was out of alignment and his injury most serious.

While the judgment is large, it is within the evidence, and will be affirmed.

RUDKIN, FULLERTON, MOUNT, and PARKER, JJ., concur.