[No. 21575. Department One. May 9, 1929.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY
POWERS, *Appellant*.[1]

*P. D. Smith,* for appellant.

*Thomas I. Oakshott,* for respondent.

FULLERTON, J.—The appellant, Powers, was convicted of the crime of attempted rape on the person of

[1]Reported in 277 Pac. 377.

a female child then under the age of eighteen years. The information filed against him was in three counts, all founded upon the same transaction. The first count, omitting the introductory parts, reads as follows:

"That the said Roy Powers, in the county of Ferry, state of Washington, on the 17th day of July, A. D. 1926, then and there being did, then and there, unlawfully, wilfully and feloniously assault one Doris Singer, a female child, not the wife of said Roy Powers and under the age of 18 years, to wit, of the age of 17 years, and did then and there, by force and violence and against the will of said Doris Singer, attempt to have sexual intercourse with and to carnally know and abuse her the said Doris Singer, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Washington."

The second count charged an assault with intent to commit a felony, being the crime denominated by the statute (Rem. Comp. Stat., § 2414) as an assault in the second degree. The third count charged an indecent assault. The jury found the appellant guilty on the first count and not guilty on the second. The third count was withdrawn from the consideration of the jury during the course of the trial, and no verdict was returned thereon. The judgment and sentence from which the appeal is prosecuted is based on the verdict returned on the first count.

The court, in its instructions to the jury, gave none on the theory of an attempt to commit a forcible rape. It instructed on the theory of an attempt to commit that form of rape called, for the purposes of distinguishment, statutory rape; its instruction in that respect being as follows:

"You are further instructed that it is the policy of the law as expressed in the statute that any female

under the age of 18 years of age shall be incapable of consenting to the act of sexual intercourse, and that any male person who shall have formed and existing in his mind an intent then and there to carnally know and abuse a female child under said age of eighteen years, and who thereupon with the purpose of carrying into effect his said formed intent to carnally know and abuse said female child, seizes or lays hands upon the body of said female child shall be deemed guilty of the crime of assaulting her with intent to commit said crime of carnal knowledge, notwithstanding he obtained her actual consent to such acts on the part of defendant, if you so find beyond a reasonable doubt. Whether the girl in fact consented or resisted is immaterial.

"In such a case the element of force nor the question of consent has nonapplication if the child is under the age of eighteen years. A female child under the age of 18 years is incapable of consenting to carnal knowledge of her, and therefore the law resists for her.

"So if you find the said Doris Singer was under 18 years of age, at said time, she was then incapable of giving her consent to an act of sexual intercourse, and it is immaterial whether she made any outcry or resistence."

The statute defining the crime of forcible rape is found at § 2435 of the code (Rem. Comp. Stat.), and reads in part as follows:

"Rape is an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent. Every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upwards not his wife; . . .

"(2) When her resistance is forcibly overcome;

"Shall be punished by imprisonment in the state penitentiary for not less than five years."

Statutory rape is defined (Id., § 2436) as follows:

"Every male person who shall carnally know and abuse any female child under the age of eighteen years,

not his wife, and every female person who shall have sexual intercourse with any male child under the age of eighteen years, not her husband, shall be punished as follows:

"(1) When such child is under the age of ten years, by imprisonment in the state penitentiary for life;

"(2) When such child is ten and under fifteen years of age, by imprisonment in the state pentitentiary for not less than five years;

"(3) When such child is fifteen and under eighteen years of age, by imprisonment in the state penitentiary for not more than ten years, or by imprisonment in the county jail for not more than one year."

██ It is the appellant's contention that, notwithstanding the information may be broad enough to state a crime under either section of the statute, the evidence was not sufficient to sustain a conviction under the second, and that, in consequence, it was error to submit an instruction under it. Unquestionably, the prosecuting witness did testify to acts on the part of the appellant and to acts of resistance on her own part which tended to show an attempt to commit a forcible rape upon her person. But in addition to this testimony, she testified that she was under the age of eighteen years at the time of the assault, which brought the acts the appellant was accused of committing under the second section of the statute. The evidence, as we read it, was sufficient to carry the case to the jury on either section of the statute. This being true, the court could well have submitted the case to the jury on both theories; that is to say, on the theory of an attempt to commit a forcible rape on a female person over eighteen years of age, and of an attempt to commit a rape without force on a female child under that age. For the court to omit to charge upon the first theory and to charge on the second, is not an error of which the appellant can complain. The omission was

rather to his benefit than to his detriment, and hence could in no way be prejudicial to him.

It may be that we have not caught the appellant's meaning on another branch of his argument, but if we understand him, he asserts that, if the information states a crime under the provision of the statute under which he was convicted, it states more than one crime. But this question we have met and determined to the contrary in our prior decisions. In *State v. Adams,* 41 Wash. 552, 83 Pac. 1108, the information charged a forcible rape on the person of a female child "under the age of eighteen years, to wit, of the age of 17 years." A demurrer was sustained to the information in the court below on the theory that more than one crime was stated, and the state appealed. Reversing the case, we used this language:

"The appellant contends that this information charges but one crime under subdivision three of said section, and that the allegations of force and want of consent should be rejected as surplusage. The respondent on the other hand contends that the information charges the crime of rape under both the first and the third subdivisions, and that therefore two crimes are charged. It seems to us the demurrer was improperly sustained whichever view we adopt. If the contention of the appellant be sustained, it is manifest that the information charges but one crime, and in our opinion the same conclusion follows if we adopt the views of the respondent. The statute defines but one crime and prescribes but one penalty therefor. Where a statute provides that a crime may be committed in different ways or by different means, the act constitutes but a single offense, whether one or all of the ways and means be employed in its commission, and it is proper to charge in an information that the crime was committed in one of the ways or by one of the means specified in the statute, or in all the ways and by all the means conjunctively."

See, also: *State v. Fillpot,* 51 Wash. 223, 98 Pac. 659; *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989; *State v. McBride,* 72 Wash. 390, 130 Pac. 486; *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942; *State v. Gipson,* 92 Wash. 646, 159 Pac. 792; *State v. Klein,* 94 Wash. 212, 162 Pac. 52; *State v. Hennessy,* 114 Wash. 351, 195 Pac. 211; *State v. Murie,* 140 Wash. 71, 248 Pac. 79; *State v. Spiller,* 146 Wash. 180, 262 Pac. 128.

The crime of rape by force and the crime of rape because of the age of the victim, are defined, it is true, in separate sections of the statute, but this does not make a single act which is violative of both sections, separate crimes. The pleader may charge the offense as a rape by force and as a rape because of age, and if he proves either or both, he satisfies the statute and the defendant may be convicted. Nor is our case of *State v. Allen,* 128 Wash. 217, 222 Pac. 502, contrary to this principle. In that case, the prosecuting attorney charged a forcible rape upon a female child under the age of eighteen years. At the trial, he elected to stand on the allegation of force, and it was held that he was within his privileges in so doing. It may be that the language of the opinion can be construed as implying that he was required to so elect, but it was not the intention of the court to so hold.

It is also said that the verdict is contradictory, and that the finding on the one count neutralizes the finding on the other. But we cannot so conclude. An assault in the second degree, as the crime is defined by the statute, involves elements not included in the crime of statutory rape, and, this being true, it does not follow that a verdict of acquittal on the one charge necessitates a verdict of acquittal on the other.

The further contention is that there was misconduct on the part of the jury necessitating a new trial; the misconduct charged being an illegal separa-

tion of the jury. It appears that, on the morning of the second day of the trial, while the jury were being brought to the court house in charge of a bailiff after an overnight adjournment of the court, they had reached a place in the court house yard near the front entrance to the court house. The jury room for which they were headed, was in the upstairs part of the building. There were two ways of reaching it, one up the main stairway leading from the front entrance of the building, and the other by a stairway leading from a side door some forty feet back of the front entrance. Ten of the jurors at that time were walking in front of the bailiff, and two behind him. As they reached the place where the walk divided, the ten jurors who were in front of the bailiff turned to go into the side door, the bailiff following them. The other two jurors, not noticing the direction the others had taken, entered the building at the front door. They had not proceeded far when they discovered that they were not with the main body of the jurors, and, thinking that they had loitered behind them, hurried on to the jury room, passing through the main court room. Not finding the main body of the jury there, they went down the back way and joined them. The time they were apart from the other jurors was estimated to be from one to three minutes. They communicated with no one while they were so apart, and no one attempted to communicate with them, except perhaps the bailiff who seems to have been making an attempt to get the jurors together. No very satisfactory explanation is given why the jurors entering the front door were so far unobservant as not to notice the direction the main body of the jurors had taken, although it is said that the explanation lies in the situation which is hard to make clear by words. Enough does appear, however, to

show that the separation was not intentional or wilful, and that it was the result of an honest mistake.

It is at once apparent, of course, that the appellant suffered no prejudice in fact by the conduct of the jurors, and the sole question is, did he suffer prejudice in law. The statute (Rem. Comp. Stat., § 2159) provides that jurors in criminal cases shall not be allowed to separate except by the consent of the defendant and the prosecuting attorney, but shall be kept together, without meat or drink, unless otherwise ordered by the court. The statute has been before us many times, and we have always applied it somewhat strictly. In all instances where the members of the jury have been allowed to separate during the course of the trial without the consent of the defendant and commingle with the public, we have held it error requiring a new trial regardless of the question of prejudice. Without attempting to collect all of the cases in which we have so held, we cite the following as illustrative: *Anderson v. State,* 2 Wash. 183, 26 Pac. 267; *State v. Place,* 5 Wash. 773, 32 Pac. 736; *State v. Rogan,* 18 Wash. 43, 50 Pac. 582; *State v. Barkuloo,* 18 Wash. 693, 50 Pac. 1102; *State v. Mason,* 19 Wash. 94, 52 Pac. 525; *State v. Strodemier,* 41 Wash. 159, 83 Pac. 22, 111 Am. St. 1012; *State v. Bennett,* 71 Wash. 673, 129 Pac. 409; *State v. Morden,* 87 Wash. 465, 151 Pac. 832; *State v. Le Fors,* 115 Wash. 21, 195 Pac. 1041; *State v. Rasmussen,* 125 Wash. 176, 215 Pac. 332.

In others again, where there was some apparent necessity for the separation, and the separate parts of the jury were at all times under the charge of bailiffs and there was no commingling by any member of the jury with the general public, we have held the separation without error. *Edwards v. Territory,* 1 W. T. 195; *State v. Burns,* 19 Wash. 52, 52 Pac. 316;

*State v. Harris,* 99 Wash. 475, 169 Pac. 971, L. R. A. 1918C 318.

In the comparatively recent case of *State v. Johnson,* 122 Wash. 394, 210 Pac. 774, a somewhat novel situation was presented. There the jury were waiting in the jury room for the incoming of the court. A public demonstration of some sort was then being carried on at a place not capable of being seen from the jury room, and certain of the jurors expressed a desire to the bailiffs to witness it. The bailiffs undertook to take the jury to a place where the demonstration could be witnessed, but in so doing one of the jurors was, by an oversight, left locked in the room while the other eleven went off with the bailiffs. The jury were separated for some half an hour. It was shown that the juror left behind had no communication with the outside, and his own affidavit was to the effect that he neither saw nor heard any one while the other jurors were absent. The separation was held not to be reversible error; the court saying:

"If there was a physical separation of the jurors, the fact nevertheless remains that all the jurors, including the one remaining locked in the jury room, were in the custody and control of the bailiffs. Contentions of this nature, in their last analysis, have to do more with the question of proper sequestration of jurors by officers having them in charge, than to the bare, naked question of whether or not they have been physically separated during the trial and their deliberations."

It is at once apparent that none of the cited cases meets the exact situation here presented. The facts do not fall within the facts of the cases first cited, since there was no commingling by the jurors with the general public. Nor is it within the rule of the cases recognizing the validity of a separation arising from necessity, since there was no apparent necessity for a

separation, and the two jurors who were apart from the others were not then under the immediate surveillance of a bailiff. Nor does it fall within the case of *State v. Johnson,* as here the jurors were not locked in a room where no communication could be had with them during their absence from the other jurors.

But we think nevertheless that the situation shown is not one that requires a reversal. The separation was unintentional and but momentary, and was remedied by the jurors themselves as soon as the fact was disclosed to them. There was no commingling by the jurors with the general public, and no member of the general public communicated with them during the separation. The appellant was in no way prejudiced in fact by the acts of the jurors, and under the circumstances it seems too much to say that he was prejudiced in law.

The judgment is affirmed.

MITCHELL, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.