[No. 23843.    Department One.    March 24, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. OLLIE LEE
STRATTON, *Appellant.*[1]

*Joseph H. Johnston, Wm. J. Conniff,* and *A. Henry
Packard,* for appellant.

*W. J. Daly, Jr.,* for respondent.

PARKER, J.—This is an application to this court by
appellant, Stratton, for leave to apply to the supe-
rior court for Jefferson county, and for leave to that
court to hear and dispose of, upon the merits, his
petition for vacation of the judgment of conviction
of murder in the first degree rendered against him by
that court, and to award him a new trial.

Following the rendering of the judgment, Strat-
ton appealed therefrom to this court. On December 23,
1932, this court rendered its decision affirming the
judgment.  *State v. Stratton,* 170 Wash. 666, 17 P.
(2d) 621.

On January 20, 1933, Stratton filed in this court his
application looking to the vacation of the judgment
and a new trial, under Rem. Rev. Stat., § 464 *et seq.,*

[1]Reported in 20 P. (2d) 596.

alleging, as grounds therefor, the separation of the jury during the course of the trial without the knowledge or consent of himself or his counsel; which fact neither he nor his counsel discovered until a few days prior to the filing of this application in this court. The appeal being still pending in this court upon Stratton's petition for a rehearing, this application was continued for hearing until the appeal should be disposed of; this for the reason that, in the event of reversal of the judgment and the awarding of a new trial upon the appeal, there would be no necessity for further consideration of this application.

On February 14, 1933, this court denied Stratton's petition for rehearing. Thus, the judgment became final upon the appeal record; though subject to further inquiry upon the new question presented by this application; which question was, of course, not presented and, if the allegation of Stratton's petition be true, could not have been presented upon the appeal record.

On March 3, 1933, this application came regularly on for hearing in this court. In support of, and attached to, the application are affidavits, in so far as need be here noticed, as follows:

Stratton, in his affidavit, states that:

"During the course of said trial affiant is informed and believes that the jury was permitted to separate, and that some members of the jury were separated from the others for approximately one hour, but that affiant did not at any time consent to the separation of said jurors for any purpose whatsoever; that affiant did not know that said jurors were permitted to separate until about January 5th, 1933, and that at no time and under no circumstances had he either expressly or impliedly consented to any separation of the jurors.

". . . that affiant with reasonable diligence

could not have ascertained that said jurors were separated during the course of said trial.''

Stratton's counsel, in his affidavit, states that:

''. . . he was not informed and had no knowledge of their [the jurors'] separation until about the 10th day of January, 1933; that no intimation or suspicion was ever brought to the attention of affiant that would lead him to believe or to investigate as to whether or not the jury had separated at any time, . . .''

One of the jurors, in his affidavit, states that:

''After affiant and the other eleven jurors had been selected to try said case and had been duly sworn to try said case on the evidence and a true verdict render thereon, they were taken together in the custody of the bailiff to dinner after the session of court, on the evening of the first day of said trial; that they were taken to a place in or near Port Townsend, in Jefferson county, Washington, which was a golf or country club dining room; that during the course of said meal it began raining and rained very hard, and the jurors were not willing to walk back to the court house in the rain; that after considerable discussion regarding the matter, a deputy sheriff who was acting as bailiff took three of said jurors and separated them from the rest of the jurors, taking them into his car and driving away from the building in which the other jurors were located; said deputy sheriff stating that he was going to take them to the court house and later come back and get the remaining nine jurors; that said three jurors, together with said deputy sheriff, left the balance of the jury separated from them, and were gone for approximately three-quarters of an hour, after which time said deputy sheriff brought said three jurors back to the remaining nine jurors, and some time thereafter a bus was provided to transport all of said jurors together back to the court house; that three members of the jury were separated from the remaining nine members of the jury for a period of approximately three-quarters of an hour, during which time their whereabouts was unknown to the balance of the jury.''

Another of the jurors, in his affidavit, states the same, his affidavit being apparently a carbon copy of the affidavit of the juror, above mentioned. Another juror, in his affidavit, makes exactly the same statement, except the words "one-quarter of an hour" are substituted for the words "three-quarters of an hour."

Let it be here noticed that the affidavits of the jurors do not make it certain as to whether or not there was more than one bailiff in charge of the jury. However, we have before us, filed before the day of the hearing in this court, the affidavits of two of the three bailiffs having the jury in charge.

In one of those affidavits, it is stated:

"I am now, and for more than six years last past have been a qualified and acting deputy sheriff of Jefferson county, state of Washington; that during the trial of said Ollie Lee Stratton in the superior court of the state of Washington for Jefferson county, I was a regularly appointed and qualified bailiff of that court; that on the evening of the 26th day of October, 1931, at approximately the hour of six o'clock P. M., the jury, selected to try the above entitled cause, was taken by myself, together with two other regularly sworn bailiffs, from the Jefferson county courthouse to the club house of the Port Townsend Municipal Golf Club, in the city of Port Townsend, for the purpose of permitting the said jurors and bailiffs to eat their evening meal;

"That the distance from the Jefferson county courthouse to the said club house of the Port Townsend Municipal Golf Club is approximately six city blocks;

"That after the jurors and bailiffs had eaten it began to storm and rain quite heavily and the jurors were reluctant to walk back to the courthouse thru the muddy streets and in the rain; that at the hour of approximately 7:30 o'clock P. M. of said day, I transported from the said club house to the said courthouse, in a car belonging to the proprietor of the club house, three of the said jurors; that immediately upon arriving at the back door of the courthouse I was met

by one Walter Eads, then clerk of the superior court for Jefferson county (now deceased), who instructed me to forthwith return the jurors in the car to the club house and there await a bus, which I did;

"That the total length of time the three said jurors were divided from the remaining jurors did not exceed seven or eight minutes; that during the time the said three jurors were in my car no person whatsoever communicated with them; nor was any document in writing or paper of any kind given them; nor was there any commingling by the said three jurors with the general public; that during all of said time the said three jurors were under my immediate surveillance and never out of my sight or hearing."

In the other of those affidavits, it is stated:

"That during the trial of the above entitled cause I was one of the regularly appointed, qualified and acting bailiffs of the superior court of the state of Washington for Jefferson county; that about six o'clock in the evening of October 26, 1931, the jury selected to try said cause, together with one H. C. McCormick, Madeline Bishop and myself as bailiffs, went from the Jefferson county court house to the club house of the Port Townsend Municipal Golf Club, a distance of approximately six city blocks, for the purpose of partaking of the evening meal;

"That after the jurors and bailiffs had eaten, one of the bailiffs, namely H. C. McCormick, left the premises of the Port Townsend Municipal Golf Club with three jurors and returned with the same three jurors in about seven or eight minutes;

"That during the time the remaining jurors were at the club house with myself and the said Madeline Bishop no person whatsoever communicated with them; nor was any document in writing or paper of any kind given them; nor was there any commingling by the jurors remaining at the club house with the general public."

These affidavits contain all the material facts presented to this court touching the merits of Stratton's application; that is, touching the question of the sep-

aration of the jury. So we have, touching the merits, these outstanding facts: The three jurors were physically separated from the nine jurors for a very short period. During the whole of that period all the nine jurors were in the immediate charge of two of the bailiffs. During the whole of that period all of the three jurors were in the immediate charge of one bailiff.

We shall assume that the *prima facie* showing is sufficient to call for our entertaining the application, in so far as its being timely made under Rem. Rev. Stat., § 464 *et seq.*, relating to the vacation of judgments and the granting of new trials upon the grounds therein mentioned, is concerned. See *Denny-Renton Clay & Coal Co. v. Sartori,* 87 Wash. 545, 151 Pac. 1088; *In re Shilshole Avenue,* 101 Wash. 136, 172 Pac. 338; *Haaga v. Saginaw Logging Co.,* 170 Wash. 93, 15 P. (2d) 655. So we proceed to the merits of the application.

In *State v. Harris,* 99 Wash. 475, 169 Pac. 971, L. R. A. 1918C, 318, there was a claim of error entitling the defendant to a new trial because of the separation of jurors during a noon recess of the court, when one juror was permitted to retire to the judge's chambers, where she remained until the incoming of the court, alone and unattended by any bailiff, the room remaining closed during the whole of that period of separation and no communication being made with her. Holding that such separation did not constitute such a separation as to call for new trial, Judge Fullerton, speaking for the court, observed:

"It may be questioned, moreover, whether the courts have not placed a too narrow construction on the word 'separate' as used in the statutes. The object and purpose of keeping them sequestered is, and has always been, to keep them from being influenced with reference to the matters given them in charge, by ulterior

practices. This purpose is as well accomplished when the jury are kept singly under the charge of sworn officers of the court as it is when they are kept under like officers in a body.''

In *State v. Johnson,* 122 Wash. 394, 210 Pac. 774, there was claimed error prejudicial to the rights of the accused arising out of the physical separation of the jurors in the course of the trial. The separation occurred by one juror having been accidentally left alone during a period of about half an hour in the jury room and the adjoining courtroom during a recess of the court, being locked therein, while the other eleven jurors were taken therefrom by the bailiffs to another room on the opposite side of the courthouse to view a parade upon the street from the windows thereof, the juror's absence from the eleven being unnoticed. Holding that this was not such a separation as to call for a new trial, we in that decision said:

''We think, under our decision in *State v. Harris,* 99 Wash. 475, 169 Pac. 971, L. R. A. 1918C 318, wherein our prior decisions are reviewed, this was not such a separation of the jurors as to constitute error to the prejudice of appellant. If there was a physical separation of the jurors, the fact nevertheless remains that all the jurors, including the one remaining locked in the jury room, were in the custody and control of the bailiffs. Contentions of this nature, in their last analysis, have to do more with the question of proper sequestration of jurors by officers having them in charge, than to the bare, naked question of whether or not they have been physically separated during the trial and their deliberations.''

In our later decision in *State v. Powers,* 152 Wash. 155, 277 Pac. 377, we quoted this language with approval. In that case, the separation of two jurors from the others occurred by the two, inadvertently and unnoticed by the bailiff, turning aside upon their return with the bailiff and the others to the courthouse

following an overnight adjournment of court, and proceeding through halls and portions of the courthouse apart from the others, wholly unattended by a bailiff, for a period of a few moments. They had no communication with any one during that separation. This was held not to be a fatal separation.

We do not overlook the considerable number of other decisions, particularly the earlier ones, in which separation of the jurors was held to be such as to call for a new trial. We are of the opinion that none of them is controlling in our present inquiry, in view of the three decisions and observations made therein, above quoted.

There are other statements made in the affidavits presented to us which might be of some moment in our consideration of Stratton's application, but they are made only on information and belief. Such statements of facts are no help here. *State v. Murphy,* 13 Wash. 229, 43 Pac. 44; *State v. Simmons,* 52 Wash. 132, 100 Pac. 269; *Haggard v. Seattle,* 61 Wash. 499, 112 Pac. 503; *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449.

The application is denied.

BEALS, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.