[No. 35200.   *En Banc.*   January 26, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. IRENE SHELDON CREECH, *Appellant.*[1]

*Henry Opendack,* for appellant.

*Byron E. McClanahan, B. Franklin Heuston,* and *Dale V. Whitesides,* for respondent.

[1]Reported in 358 P. (2d) 805.

DONWORTH, J.—Appellant was charged with murder in the first degree. Upon arraignment, she pleaded not guilty and also entered a special plea of not guilty by reason of insanity. After a trial, the jury returned a verdict of guilty as charged but, by a special verdict, made a finding that the death penalty should not be imposed. A motion in arrest of judgment or, in the alternative, for a new trial, was thereafter argued and denied. Judgment and sentence were entered by the trial court whereby appellant was sentenced to confinement in the women's division of the state penitentiary for a term of not more than her natural life.

In order to consider appellant's three assignments of error, it is not necessary to discuss the evidence since they each relate to a procedural matter. The claimed errors of the trial court are stated in appellant's brief as follows:

"1. Error in failing to grant the Motion for Mistrial during *voir dire* examination.

"2. Error of the court in mis-stating the fact and the law to the jury that is telling the jury that the parties had agreed to allow the jurors to separate and that the law did not allow the separation of a jury in a First Degree Murder case even if both parties agreed to it.

"3. Error in the jury separating during the trial and after submission of the case to them."

The first assignment concerns the denial of appellant's motion for a mistrial made during the *voir dire* examination of prospective jurors.

During the examination of Mrs. Addie Norris by the special deputy prosecutor, he was inquiring whether she would be impatient to get home to take care of the family property. The following occurred in the presence of all the prospective jurors then in the courtroom:

"Q. My English is poor but I guess my idea got across. Would you explain more fully to the Court what you had in mind in asking to be excused from this, and primarily I would like to know whether your being alone at home and having to take care of that place puts you in a position where you would be impatient in arriving at a result in this matter? A. Well, I understand that we can't go—is it possible that we can go home at all? Q. Well, counsel

has signed a stipulation to the effect that you could, that the jurors may separate. The defendant has not yet signed that stipulation, and until she has or has indicated whether she will or not, I can't answer your question, Mrs. Norris, but if she does, you will be allowed to separate and go home when the court is not in session. MR. OPENDACK: If Your Honor please, I would like to see the defendant who wouldn't sign after that statement to the jury. I'll make a motion for a mistrial, practically forcing the defendant to have to sign a statement which I haven't even discussed with her. They will know if she doesn't sign it today, she is the one holding them up. I haven't even talked to her about it. THE COURT: The motion will be denied. MR. HEUSTON: If Your Honor please, if I have misstated anything, or overreached anything, I would appreciate the Court instructing the jury at this time. I certainly did not intend to state anything but the facts to this jury."

It should be noted that, prior to the opening of court, counsel for the parties had discussed the matter of jury separation with the trial judge in his chambers. A written stipulation that the jury would be permitted to separate prior to the submission of the case to them for deliberation had been signed by both counsel but not by appellant herself. Counsel for appellant stated to the trial judge in chambers that he would have her sign the stipulation during the course of the trial.

Appellant argues that the above-quoted statement made by the special deputy prosecutor, in the presence of all the prospective jurors, that the jury would be permitted to separate only if appellant personally gave her consent thereto, prejudiced her and prevented her from having a fair trial. In support of her position, she cites *State v. Parker*, 25 Wash. 405, 65 Pac. 776 (1901), and *State v. Vukich*, 158 Wash. 362, 290 Pac. 992 (1930). In both decisions, this court disapproved the practice of counsel and the court's discussing the matter of separation in the presence of the jury. In both cases new trials were granted, but principally because of other errors.

In the present case the trial court, just before adjournment for the noon recess, made the following statement in the absence of the prospective jurors:

"I am of the opinion that I may grant the motion for mistrial if it is insisted upon. I notice that the stipulation, although signed by the attorneys, has a place for a signature by the defendant. It was evidently contemplated that the defendant should sign such a stipulation. If during this recess the defendant does not sign such stipulation, I may grant the motion."

Immediately upon the reconvening of the court after the noon recess, the trial court (in the absence of the prospective jurors) said:

"I have been handed by the defendant's attorney a renewal of her motion for mistrial and a statement that the defendant does not choose to sign a stipulation. I believe I will adhere to my ruling denying the motion for mistrial, as I believe I have a method in which the error can be cured. Bring in the jury."

As soon as the prospective jurors came into the courtroom, the trial judge attempted to overcome any possible prejudice to appellant by stating to the jury:

"THE COURT: Members of the jury. This will apply to all other prospective jurors. Upon careful examination of the law relative to separation of jurors, the Court has decided that in a case involving First Degree Murder such as this, that even though the parties have stipulated to a separation of the jury that the Court can not allow it. The jury will not be allowed to separate and will be kept together during the course of the trial of this case. We will endeavor to finish it this week. I make this statement now because I am going back over the jurors who are now in the box and question [you] as to the difference this may make to you on the matter and whether or not you are still capable of serving."

Appellant refers to RCW 10.49.110 as showing that the trial court's statement to the prospective jurors last above quoted was erroneous. The section referred to provides:

"Juries in criminal cases shall not be allowed to separate, except by consent of the defendant and the prosecuting attorney, but shall be kept together, without meat or drink, unless otherwise ordered by the court, to be furnished at the expense of the county."

It is contended that the court's statement was a deliberate misstatement of the law. This is the basis of appellant's second assignment of error.

Assuming that the trial court incorrectly stated the law, we are of the opinion that the prospective jurors were bound to accept the court's statement at its face value. Its effect was to relieve appellant of any responsibility or blame in the eyes of the jury for their not being permitted to separate during recesses in the trial. Therefore, we cannot hold that appellant was prevented from having a fair trial because of the special deputy prosecutor's statement to Mrs. Addie Norris, one of the prospective jurors. Parenthetically, we might mention that Mrs. Norris did not serve as a juror in this case.

For the reasons stated above, we find that appellant's first and second assignments of error are without merit.[2]

Appellant's third assignment of error relates to the denial of her motion for arrest of judgment or, in the alternative, for a new trial. She contends that there was misconduct of the jury in that it was separated both during the trial and after the case was submitted to it for deliberation.

This motion was supported by the affidavits of several jurors to the effect that all of the jurors walked together from the courthouse to the Shelton Hotel for meals and lodging and back to the courthouse in charge of a bailiff, with the exception of George P. O'Malley (who had a heart condition) and Bernice L. Hunter. These two jurors rode to and from the hotel in a Nash Rambler driven by another bailiff, Miriam Hash. Each of these two jurors deposed that during these separations they did not discuss the case themselves or with any third person. The distance from the courthouse to the hotel was about eight blocks, and the period of these separations was about four or five minutes.

---

[2]The state argues that the first and second assignments of error are not available to appellant because her counsel did not say "Exception" when the trial court orally denied her motion for a mistrial. RCW 4.80.010 *et seq.*, enacted in 1893. While the state may be technically correct, we will not, in a capital case, deprive the accused of her right to have the proceedings at her trial reviewed by this court on appeal merely because her counsel failed to utter the word "Exception." See *State v. Bird*, 31 Wn. (2d) 777, 198 P. (2d) 978 (1948). Art. I, § 22, of the state constitution guarantees the right of appeal to the accused in criminal prosecutions.

■ With respect to separations before the case was submitted to the jury for deliberations, the burden is upon the defendant to show that prejudice resulted. Appellant has made no such proof.

On the other hand, with respect to separations occurring thereafter, there is a *prima facie* presumption of prejudice, and the burden is upon the state to show that no prejudice did actually result. *State v. Amundsen*, 37 Wn. (2d) 356, 223 P. (2d) 1067, 21 A. L. R. (2d) 1082 (1950).

The trial of this case began April 20, 1959, and lasted two and a half days. The court began instructing the jury at 10:22 o'clock a.m. on April 22nd. The case must have been submitted to the jury before noon on that day. The jury's verdict was filed April 22nd, so it must have been received before midnight.

Appellant contends that the state did not meet the burden of showing a lack of prejudice resulting from the two separations which occurred *after* submission.

■ The state produced the affidavits of three jurors, each of which contained the following averment:

"That after the jury was sworn to hear the case we were kept together by the bailiffs except when going to and from the Shelton Hotel for meals and lodging in the evenings; at which time the majority of the jurors walked to the Shelton Hotel and one car was used for transportation of the other jurors. One bailiff would walk with the jurors and one bailiff would ride in the car used to transport the other jurors to the Shelton Hotel for meals and lodging. We were never separated for more than four or five minutes at a time and during this time I never discussed the case with any person or persons and my verdict and I am sure the verdict of the entire jury is based upon the evidence submitted at the trial."

In addition to these affidavits, that of Miriam Hash, one of the bailiffs, substantiated those of the jurors regarding the two separations *after* submission. She was the bailiff who drove juror No. 5 and juror No. 12 to the hotel and back. She deposed as follows:

"That I am one of the bailiffs in charge of the jury in the above entitled case; that to my knowledge none of the

jurors received any communication from any person nor did they make any communication to any person during the time they were in my charge.

"After the jury was sworn to hear the case the other bailiffs, Agnes Anderson and William Robertson and myself kept the jury together except going to and from the Shelton Hotel for meals and lodging. After the first day of trial it appeared that Juror No. 5, Mr. George P. O'Malley, due to a heart condition, made it difficult for him to walk to and from the Mason County Courthouse to the Shelton Hotel and that transportation would have to be arranged. Thereafter, the majority of the jurors would walk to the Shelton Hotel in the company of bailiff Robertson and I would drive my red Nash Rambler and transport Mr. O'Malley and one other juror. That at approximately 9:00 P.M. on April 21st, 1959, I, George P. O'Malley-Juror No. 5 and Bernice L. Hunter-Juror No. 12, rode in a red Nash Rambler owned and driven by myself from the Mason County Courthouse to the Shelton Hotel which is approximately 8 city blocks from said Courthouse and parked in front of the Shelton Hotel and waited until bailiff Robertson and the other members of the jury arrived. We all entered the Shelton Hotel together. During the short separations of April 21st, 1959, George P. O'Malley, Bernice L. Hunter or myself [neither] discussed the case nor did we have any conversation with any other person or persons."

Her statement is corroborated by juror No. 12.

Appellant complains that the state obtained affidavits from only four jurors. She asks: Where are the affidavits of the other eight? Incidentally, we might point out that the only affidavit submitted by appellant is that of her own counsel, who states that, at 9:15 p.m., April 21, 1959, he saw juror No. 12 drive up to the Shelton Hotel in a car (red Nash Rambler). She got out of the car and stood beside it. No other jurors were with her, nor was she with a sworn bailiff.

The showing made by the state was sufficient to overcome the *prima facie* presumption and to shift to appellant the burden of proving actual prejudice.

Our decision in *State v. Amundsen, supra,* is distinguishable because, in that case, the four jurors who were driven to the restaurant and back to the courthouse were not in

charge of a bailiff who had been sworn, as required by the applicable statute. Here, the two jurors who were separated were in charge of a bailiff who had qualified by taking the oath. In *State v. Rose,* 43 Wn. (2d) 553, 262 P. (2d) 194 (1953), which was not cited by either party, the state failed to meet the burden of showing that no prejudice actually resulted from the separation of the jury. In the present case, the state did meet that burden.

The trial court was correct in denying appellant's motion for new trial. *State v. Stratton,* 172 Wash. 378, 20 P. (2d) 596 (1933).

We have considered all of appellant's assignments of error, and are unable to hold that the trial court committed prejudicial error in the respects claimed therein.

The judgment and sentence are hereby affirmed.

ALL CONCUR.